**Jeff M. HALL, Plaintiff,**

v.

**CROPMATE, a Conagra Independent Company, Defendant.**

**No. IP 93–1491–C–B/S.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 23, 1995.

Lester H. Cohen, Haskin, Lauter & Cohen, Indianapolis, IN, for plaintiff.

David J. Carr, Gary P. Goodin, Johnson Smith Pence Densborn Wright & Heath, Indianapolis, IN, for defendant.

## MEMORANDUM ENTRY

BARKER, Chief Judge.

This matter is before the Court on Defendant's motion for summary judgment. For the reasons stated below, Defendant's motion for summary judgment is granted in part and denied in part.

## I. Background

In July, 1992, Plaintiff Jeff M. Hall went to work for Formica, a division of Ogden Allied Corporation. Hall was a full-time employee with Formica. He and his family (a wife and

two children) received medical insurance through Formica's group health insurance plan. On or about February 2, 1993, while still working for Formica, Hall began a part-time job with Defendant Cropmate, a Conagra Independent Company ("Cropmate"), to supplement the family income. On February 6, 1993, Hall signed an agreement entitled "Company Policy for Temporary Employees" (the "Agreement"). The Agreement stated that Hall was a temporary employee not eligible for certain benefits, including health and life insurance. The Agreement further stated that if Hall were to "become a qualified, full-time employee, [he would] have the option to enroll [in the benefit plans] if [he] so desire[d]."

About ten days after Hall went to work for Cropmate he became a full-time employee there and quit his job at Formica. Hall contends that he took the full-time position at Cropmate and quit his job at Formica only because Hall's supervisor at Cropmate, Rod Brown, promised him certain pay and benefits at Cropmate.[1] Hall claims he had informed Brown of his wife's health problems, expressly telling Brown that he could not leave Formica and go to work for Cropmate full-time unless Cropmate provided Hall with medical benefits. According to Hall, Brown assured him that when he went to work for Cropmate full-time he would be a "regular, full-time employee ... and would be covered under the benefits plan of Cropmate's parent company Conagra." Affidavit of Hall at 2.

Hall resigned his position at Formica on February 14, 1993. He elected not to extend his (and his family's) medical coverage under COBRA. According to Hall, as soon as he became a full-time employee, he questioned Brown about when he would be receiving the paperwork concerning his insurance. In an affidavit, one of Hall's fellow employees at Cropmate, Toby Back, testifies that he witnessed Hall questioning Brown about Hall's insurance. According to Back, Brown responded that "someone from insurance would be there in the next day or two to set up

[Hall's] insurance." Affidavit of Toby Back at 2. Back also testifies that when Hall was still working part-time for Cropmate Brown told Back that "he was trying to get [Hall] to join Cropmate full-time, but that [Hall] needed higher wages and medical coverage before he would leave his job at Formica." *Id.*

The circumstances surrounding Hall's departure from Cropmate are not clear. According to the allegations in Hall's Complaint, on June 5, 1993, Hall once again asked Brown about his insurance and Brown told Hall to "give it some more time." At that point Hall told Brown that he intended to "check out [his] legal rights because this can't be right." Two days later Hall's brother tried to contact him at work and was told Hall no longer worked at Cropmate. When Hall found out about his brother's experience, Hall asked Brown if Hall was still employed at Cropmate and Brown replied that he was not. Hall claims he was not given a reason for his termination. Cropmate, on the other hand, contends that Hall voluntarily resigned on June 5, 1993. Brown claims that Hall returned to work on June 7, 1993, inquiring about his job status. Brown alleges that when he informed Hall that Hall's position had been filled Hall became angry and threatening.

## II. Discussion

In the instant case, Hall seeks to have Cropmate fulfill its alleged part of the bargain. Hall's Complaint is comprised of three counts. Count I claims breach of contract. Count II claims promissory estoppel. In Count III, Hall alleges that Cropmate acted in violation of 29 U.S.C. § 1140 when it prevented Hall from receiving health insurance benefits. Hall seeks damages of reinstatement with full benefits and seniority restored and back pay. Pursuant to 29 U.S.C. § 1132, Hall also seeks compensatory damages, lost income from the date of termination, liquidated damages, attorneys' fees and costs.

---

1. Although Hall had earned $9.10 per hour at Formica, his full-time job at Cropmate paid only $7.50 per hour. According to Hall, he was promised the following pay and benefit package when he went to work full-time at Cropmate:

"the same insurance coverage Plaintiff had with Formica, [$7.50] per hour wages, all residential gas paid for, a company truck to drive, and one half (½) of a beef each year." Complaint, ¶ 11.

This action was filed in state court but properly removed to this Court because it contains a claim for civil enforcement of a provision of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq. See* 29 U.S.C. § 1132(e)(1); 28 U.S.C. § 1441(a). Jurisdiction in this Court is proper. 29 U.S.C. § 1132(e)(1); 28 U.S.C. § 1367.

This matter is currently before the Court on Cropmate's motion for summary judgment. Cropmate argues that it is entitled to summary judgment for the following reasons: Hall is precluded from recovering on his state law claims because they are related to an ERISA benefit plan; Hall's ERISA claims must fail because they are based upon an alleged oral modification of an ERISA benefit plan; and, even if Hall may properly make claims based upon an oral promise, he cannot recover because he has not shown a violation of 29 U.S.C. § 1140 and he failed to exhaust his remedies under the benefit plan; and, finally, Cropmate argues that Hall has not sufficiently supported his claim of promissory estoppel.

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if:

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Fed.R.Civ.Proc. 56(c). While the burden rests squarely on the party moving for summary judgment to show "that there is an absence of evidence to support the nonmoving party's case", *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986), the nonmoving party responding to a properly made and supported summary judgment motion still must set forth facts showing that there is a genuine issue of material fact and that a reasonable jury could return a verdict in its favor. *See Wolf v. City of Fitchburg,* 870 F.2d 1327, 1329 (7th Cir.1989); *Posey v. Skyline Corp.,*

702 F.2d 102, 105 (7th Cir.1983), *cert. denied,* 464 U.S. 960, 104 S.Ct. 392, 78 L.Ed.2d 336 (1983). "The moving party is 'entitled to a judgment as a matter of law' [if] the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). If doubts remain, however, as to the existence of a material fact, then those doubts should be resolved in favor of the nonmoving party and summary judgment should be denied. *See Wolf,* 870 F.2d at 1330.

A. State Law Claims

■ As this case involves a dispute about the terms of an employment arrangement, it would seem to be a simple dispute concerning the enforcement of an agreement, best handled through state contract law. However, since the main term at issue relates to an ERISA employee benefit plan, the case becomes more complicated.

ERISA law is clear that where a case relates to an ERISA plan, all state law claims are preempted. *Central States v. Neurobehavioral Assoc., P.A.,* 53 F.3d 172 (7th Cir.1995); *Thomason v. Aetna Life Ins. Co.,* 9 F.3d 645, 646 (7th Cir.1993); 29 U.S.C. § 1144(a) ("[with few exceptions, ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan"); *Pohl v. Nat'l Benefits Consultants, Inc.,* 956 F.2d 126, 127 (7th Cir.1992) ("[29 U.S.C. § 1144(a)] knocks out any effort to use state law, including state common law to obtain benefits under [an employee benefit] plan"). Hall concedes in response to Cropmate's motion for summary judgment that to the extent his Complaint makes claims under state law they must fail. Therefore, summary judgment is proper as to Count I (state law contract claims). *See, e.g., Miller v. Taylor Insulation Co.,* 39 F.3d 755, 758 (7th Cir.1994). Summary judgment is also proper as to Count II to the extent that it makes a claim for state law promissory estoppel.[2] *See, e.g., Russo v. Health,*

---

**2.** Count II may be read to make claims of both state law promissory estoppel and ERISA promissory estoppel. *See* Fed.R.Civ.P. 8(f). To the extent that Count II makes a claim for ERISA

*Welfare & Pension Fund,* 984 F.2d 762, 767 (7th Cir.1993).

### B. Federal Law Claims

#### 1. Promissory Estoppel

■ Cropmate contends that Hall's claims amount to an allegation of oral modification of an ERISA provision and must therefore fail as a matter of law. ERISA law has recognized and strongly enforced a policy against oral modifications of ERISA plans. *See Miller,* 39 F.3d at 759 (citations omitted). "Oral representations or other informal statements cannot be used to contradict or supersede the terms of an ERISA plan." *Schoonmaker v. Employee Savings Plan of Amoco Corp.,* 987 F.2d 410, 412 (7th Cir. 1993) (citations omitted). Therefore, if Hall is asking this Court to enforce an oral modification of an ERISA plan, his claim must fail.

However, nothing in Hall's case seeks to modify an ERISA plan. At most, Hall's claims concern whether he is covered by the plan; so, the only term at issue is the one defining which employees are covered by the plan, and nothing in that term would have to be modified to achieve coverage for Hall under the plan.[3] What Hall truly seeks then is to promissorily estop Cropmate from denying him coverage under the plan. *See,* e.g., *Miller,* 39 F.3d at 758.

In passing ERISA, Congress "expected that 'a federal common law of rights and obligations under ERISA-regulated plans would develop.'" *Thomason,* 9 F.3d at 647 (quoting *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 1557, 95 L.Ed.2d 39 (1987)) (citations omitted). The Seventh Circuit has included promissory estoppel in the development of ERISA common law. *See,* e.g., *Miller,* 39 F.3d at 758–59; *Thomason,* 9 F.3d at 647; *Black v. TIC Investment*

*Corp.,* 900 F.2d 112, 114–15 (7th Cir.1990). In *Black,* the Seventh Circuit held that estoppel could be raised in ERISA cases. 900 F.2d at 115. The court declared that the "statute is silent" on whether estoppel is applicable to ERISA actions and proceeded to focus on the policy grounds for applying estoppel. *Id.* at 114. The court concluded that "where there is no danger that others associated with the plan can be hurt, there is no good reason to breach the general rule that misrepresentation can give rise to an estoppel."[4] *Id.* at 115.

Recently, the Seventh Circuit, via Chief Judge Posner, opined on the continued validity of the use of promissory estoppel in ERISA cases. *Miller,* 39 F.3d 755. *Miller* involves, as does the instant case, a plaintiff's claim that a defendant company is estopped from denying that the plaintiff is an insurance plan participant. *Id.* In *Miller,* plaintiff was a retired president of the defendant company. *Id.* at 757. Upon retiring, plaintiff had entered a ten-year "Consultation and Non–Competition Agreement" with defendant. *Id.* The agreement provided, *inter alia,* that plaintiff would be entitled to participate in defendant's medical reimbursement plan. *Id.* In the eighth year of the agreement, defendant switched insurance companies. *Id.* The new company's policy limited its coverage to full-time employees (which the predecessor policies also had) and the new company therefore delisted plaintiff and his family as participants. *Id.*

In reversing the district court's grant of summary judgment to the defendant, the Seventh Circuit held that defendant may be promissorily estopped to deny that plaintiff is a participant. *Id.* at 758. The language of the plan itself was held not to be a bar to plaintiff's ability to make this claim:

---

federal common law estoppel, it is discussed below.

3. The plan covers individuals who are permanent, full-time employees (working a minimum of 30 hours per week, 52 weeks per year).

4. In *Black,* the court reasoned that, due to the nature of the plan at issue (an unfunded single employer welfare benefit plan) it presented no "danger that others associated with the plan can

be hurt" by paying the promised benefits (because "there is no particular fund which is depleted by paying benefits"). 900 F.2d at 115. In the instant case, Cropmate has not presented the Court with any evidence of danger that others associated with the plan can be hurt. Hall alleges that the plan at issue is a single employer plan (i.e., not a multi-employer plan), Hall's Opposition Memorandum at 6 n. 2, and Cropmate does not argue anything to the contrary.

It would beg the question whether a person (provided that he is not outside the pale of the statute altogether) could become a plan participant by operation of promissory estoppel to conclude that he cannot invoke the doctrine unless he has a colorable claim to benefits that is based on the language of the plan itself.

*Id.* at 759. The Court clearly held that the concept of promissory estoppel may be used in an ERISA case to make a person a plan participant. *Id.* at 758.

*Miller* goes on to address the issue of applying promissory estoppel to enforce an oral promise:

> Conceivably the policy against oral modification of ERISA plans ... may bar using the concept of estoppel to modify the terms of a written plan on the basis of an oral promise, although *Kane v. Aetna Life Ins. Co.,* 893 F.2d 1283, 1286 (11th Cir. 1990), is to the contrary, and the issue is unresolved in this Circuit.

*Miller,* 39 F.3d at 759 (citations omitted). The Court opined, however, that the public policy justifications for the rule against oral modifications of ERISA plans are not necessarily the same for oral promises in the promissory estoppel context:

> The main objection ... to oral modifications is that they would enable the plan's integrity, and possibly its actuarial soundness, to be eroded by relatively low-level employees who in response to inquiries about the scope of coverage advise participants that a particular medical procedure is covered, even though the plan is explicit that it is not covered.... This concern is diminished when the doctrine is used to prevent an employer from denying that an employee (or as in this case a former employee) is a participant in the plan.

*Id.* (citations omitted). Promises that a person is a plan participant are much more likely to be made by a higher ranking official of the company: "Assurances that one is a participant, as distinct from assurances concerning the plan's coverage of a particular medical procedure, are unlikely to come from low-level employees...." *Id.* (citation omitted).

■ To the extent that *Miller* addresses (albeit in dicta) oral promissory estoppel in ERISA cases, its reasoning applies to the instant case. Therefore, based on *Miller,* this Court finds that Hall is not precluded as a matter of law from making a claim of promissory estoppel on the basis of Cropmate's alleged oral promise.

■ However, Hall must still satisfy all of the elements of a claim for promissory estoppel:

> A party asserting estoppel must show that: (1) the opposing party knowingly misrepresented or concealed a material fact; (2) the complaining party, not knowing the truth, reasonably relied on that misrepresentation or concealment; (3) the complaining party suffered detriment; and (4) the complaining party had no knowledge or convenient means of ascertaining the true facts which would have prompted it to react otherwise.

*Krawczyk v. Harnischfeger Corp.,* 41 F.3d 276, 280 (7th Cir.1994) (citing *Loyola Univ. of Chicago v. Humana Ins. Co.,* 996 F.2d 895, 902 (7th Cir.1993)). In its memorandum in support of its motion for summary judgment, Cropmate argues that Hall's reliance was not reasonable. In its reply brief, Cropmate argues for the first time that Hall has not proven that he relied to his detriment because he has offered no proof of damages and his wife's liver condition, a pre-existing illness, would not have been covered under the plan anyway.

■ Cropmate claims that Hall's reliance on Brown's alleged assurances was not reasonable because the Agreement Hall signed explicitly stated that he was not eligible for health insurance. However, the Agreement also specifically states: "should I become a qualified, full-time employee, if have the option to enroll [in the health insurance plan] if I so desire." At the time Hall signed the Agreement, he was a part-time employee. When he became a full-time employee, Hall alleges, it was with the understanding that he would be a qualified full-time employee eligible to enroll in the health insurance plan. Nothing in the Agreement would lead Hall to believe that such a change could not happen; in fact, the Agreement explicitly leaves open

the possibility that such a change will take place. Therefore, Cropmate is incorrect in arguing that Hall's reliance was unreasonable based upon the Agreement. Hall's reliance presents a genuine issue of material fact not properly resolved at this juncture.

 Cropmate's argument about Hall's showing of detriment is similarly unsuccessful. To establish detriment, Hall "must show that, had it not been for the promise, he would have obtained comparable medical insurance." *Miller*, 39 F.3d at 759. Cropmate contends that in addition to this showing (which Hall has made, for purposes of summary judgment), Hall must submit proof of the monetary damage he suffered by not being insured during the time in question. While this proposition does not appear to be unreasonable, the Court need not address it because of the untimely fashion in which it was raised. It is well established that new arguments may not be first raised in a reply brief—a party must state all of its reasons in support of a motion the first time around. *Rockrohr v. Norfolk S. Corp.*, 797 F.Supp. 664, 665 (N.D.Ind.1992) (citations omitted); see *Wilson v. O'Leary*, 895 F.2d 378, 384 (7th Cir.1990) (applying same principle to appellate arguments). Therefore, Cropmate is not entitled to summary judgment on Hall's claim of ERISA promissory estoppel.[5]

### 2. Section 510 Claim

Hall seeks relief in Count III of his Complaint pursuant to Section 510 of ERISA, which provides, in pertinent part:

It shall be unlawful for any person to discharge, ... discipline, or discriminate against a participant or beneficiary for exercising any right to which he is entitled under the provisions of an employee benefit plan, this subchapter, section 1201 of this title, or the Welfare and Pension Plans Disclosure Act [29 U.S.C.A. § 301 *et seq.*], or for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan, this subchapter, or the Welfare and Pension Plans Disclosure Act.

29 U.S.C. § 1140. By its terms Section 510 protects plan participants from actions motivated by an employer's desire to prevent an employee from attaining rights under the plan. *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

In its memorandum in support of its motion for summary judgment, Cropmate argues that Hall has not established a prima facie case of a Section 510 violation. In response, Hall states that "[t]his is a straightforward ERISA estoppel case." Opposition to Defendant's Motion for Summary Judgment at 5. Hall does not address any of Cropmate's arguments about the Section 510 claim. As Cropmate's motion for summary judgment is unopposed as to Count III, it is granted.

### III. Conclusion

For the reasons stated above, the motion of Defendant for summary judgment is granted in part and denied in part. Summary judgment is granted as to Plaintiff's state law claims and Section 510 ERISA claim. Summary judgment is denied as to Plaintiff's ERISA promissory estoppel claim.

---

5. Of course, if Cropmate wishes to further brief this issue and has solid evidence to support its assertions, it may seek the leave of this Court to do so.