**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HEALTHSOUTH REHABILITATION
HOSPITAL,
Plaintiff-Appellant,

v.

AMERICAN NATIONAL RED CROSS,
d/b/a American Red Cross South
Carolina Blood Services Region,
Defendant-Appellee,

and

No. 95-2645

AETNA INSURANCE COMPANY OF
AMERICA; ALBERTA SHAW; DERRICK
WAGNER, individually and as Parents
and Natural Guardians of Eric
Shaw, a Minor under the age of
Eighteen (18) Years,
Defendants.

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Cameron McGowan Currie, District Judge.
(CA-94-3022-22)

Argued: September 27, 1996

Decided: December 3, 1996

Before ERVIN and HAMILTON, Circuit Judges, and SPENCER,
United States District Judge for the Eastern District of Virginia,
sitting by designation.

_____

Affirmed by published opinion. Judge Hamilton wrote the opinion, in which Judge Ervin and Judge Spencer joined.

_____

## COUNSEL

**ARGUED:** Annette Roney Drachman, LADDAGA, CROUT & DRACHMAN, P.A., Charleston, South Carolina, for Appellant. Daniel J. Westbrook, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee. **ON BRIEF:** Linda C. Garrett, LADDAGA, CROUT & DRACHMAN, P.A., Charleston, South Carolina, for Appellant. Alice V. Harris, NELSON, MULLINS, RILEY & SCARBOROUGH, L.L.P., Columbia, South Carolina, for Appellee.

_____

## OPINION

HAMILTON, Circuit Judge:

This is a suit for damages filed by HealthSouth Rehabilitation Hospital (HealthSouth) pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C.A. §§ 1001-1461 (West Supp. 1995). The sole remaining defendant in this case is the American National Red Cross, South Carolina Blood Services Region (Red Cross). HealthSouth's claims against the other defendants have either been settled or resolved. The district court granted summary judgment to Red Cross, and we now affirm.

I.

Red Cross maintains "For Your Benefit," a self-insured ERISA welfare plan (Plan) for its employees. Red Cross is the plan administrator, and Aetna Life Insurance Company (Aetna) provides administrative and ministerial services to Red Cross pursuant to a contract. According to that contract, Aetna had the authority to make determinations on behalf of Red Cross with respect to benefit payments under the Plan and to pay out those benefits, subject to Red Cross's reserved right to modify any such determinations. Aetna had no contractual

authority to modify the Plan by declaring coverage for non-covered procedures, nor to bestow beneficiary status on non-beneficiaries.

Derrick Wagner (Wagner) is a Red Cross employee and the natural father of Eric Shaw. Red Cross provides all employees with a summary Plan description, and according to practice, one was distributed to Wagner. That summary explains that an employee may enroll himself as a Plan participant and his spouse and dependent children as Plan beneficiaries. In June 1989, Wagner completed a Plan enrollment form in which he elected to obtain medical coverage for himself only. At first, Wagner checked the box "yes" to indicate coverage election for dependent children but then marked through the "yes" box and checked "no" and initialed the change. No premium payments for Eric Shaw's coverage under the Plan were ever made by Wagner or received by the Red Cross. Accordingly, Eric Shaw never satisfied the Plan definition of "beneficiary."

On January 4, 1994, Alberta Shaw, Eric Shaw's mother, took Eric Shaw to HealthSouth, in Florence, South Carolina, for rehabilitation therapy. Alberta Shaw represented to HealthSouth that Eric was covered by Wagner's Red Cross Plan and signed a document assigning the right to all benefits payable from any and all insurance policies over to HealthSouth. Alberta Shaw also presented HealthSouth with an insurance card which advised health care providers to contact Aetna to certify hospital admissions or verify coverage. That card also states that it does not guarantee coverage.

Before HealthSouth admitted Eric, the hospital's Admissions Coordinator called an Aetna representative to verify coverage. That Aetna representative erroneously informed the Admissions Coordinator that Eric Shaw was a covered beneficiary under the Plan with no deductible and one hundred percent coverage for approved charges. A "confirmation fax" was also sent to Aetna by HealthSouth on January 4, 1994, but no response was received by HealthSouth to the confirmation fax until February 15, 1994.

Based on Aetna's oral assurances, Eric Shaw was admitted at HealthSouth and underwent treatment for several weeks. Throughout Eric's stay at the hospital, Aetna was called on a weekly basis to obtain pre-certification for additional days of treatment. That pre-

3

certification was always orally given. However, on February 15, 1994, an Aetna employee contacted HealthSouth and stated that the earlier oral confirmation of beneficiary status was in error. Aetna also informed HealthSouth for the first time that Eric Shaw was not a beneficiary under the Plan. HealthSouth discharged Eric Shaw on February 17, 1994, after he had incurred $82,967 in expenses. The hospital submitted that bill to Aetna, but Red Cross declined to pay because Wagner had never elected to secure coverage for Eric.

HealthSouth brought an action against Red Cross, Aetna, Derrick Wagner, and Alberta Shaw, seeking to recoup Eric Shaw's hospital bills. The hospital alleged two claims against Red Cross in its amended complaint. First, the hospital alleged that Aetna acted as Red Cross's designated agent when Aetna orally confirmed Eric Shaw's coverage under Wagner's health insurance plan with Red Cross. Accordingly, HealthSouth asserted that Aetna's "interpretation" modified the Plan and Red Cross was bound by that modification. HealthSouth further maintained that because of the modification, Eric Shaw became a beneficiary and Red Cross was liable for Eric Shaw's hospital costs of $82,967. Second, HealthSouth alleged that it had become a valid assignee of any rights Eric Shaw had under the Plan and because Red Cross refused to pay the benefits allegedly owed to Eric as a now "confirmed" beneficiary of the Plan, Red Cross had breached the fiduciary duties it owed to HealthSouth as assignee. 29 U.S.C.A. § 1104(a)(1).

Red Cross filed a motion for summary judgment, claiming that HealthSouth did not have standing to bring the suit because Eric Shaw was not a beneficiary or an employee of a qualifying ERISA plan. 29 U.S.C.A. § 1132(a). HealthSouth opposed summary judgment and in its memorandum in opposition, indicated that if the district court was inclined to grant summary judgment to Red Cross, HealthSouth requested leave to amend its complaint to add an estoppel claim. HealthSouth also objected to the discovery restrictions imposed on it by the district court.

The district court granted summary judgment to Red Cross and in so doing rejected all of HealthSouth's claims, including the attempt to amend its complaint. HealthSouth timely brought this appeal questioning the district court's grant of summary judgment on its modifi-

4

cation claims, the district court's discovery ruling, and the district court's refusal to entertain its proposed amendment to the complaint to add a promissory estoppel theory of recovery.

II.

Whether Red Cross was entitled to summary judgment is a matter of law which we review de novo. Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Granting summary judgment as a matter of law is appropriate when the pleadings, depositions, affidavits, and other documents in the record leave no issue of any material fact which needs to be passed on by a jury. Fed. R. Civ. P. 56(c). Accordingly, the moving party must negate any material issue of fact and prove its entitlement to judgment on the relevant legal principles. See Celotex Corp. v. Catrett , 477 U.S. 317, 323 (1986). In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the non-moving party. United States v. Diebold, 369 U.S. 654, 655 (1962).

III.

HealthSouth contends that the district court erred when it concluded that HealthSouth had no standing to bring its ERISA claims. We disagree.

In order to establish its right to derivative standing because of Alberta Shaw and Eric Shaw's assignment of rights, HealthSouth would have to show that Eric Shaw was somehow "made" a beneficiary by Aetna's oral assurances that Eric Shaw's hospital expenses would be covered. Other than the Secretary or a fiduciary, an ERISA action may be brought only by a "participant" or a beneficiary to an ERISA plan. 29 U.S.C.A. § 1132(a) (West 1994). ERISA defines "participant" as "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan . . . or whose beneficiaries may be eligible to receive any such benefit." 29 U.S.C.A.§ 1002(7). Therefore, a person who is neither a participant nor a beneficiary lacks standing to bring an ERISA action against a fiduciary or plan administrator. See Stanton v. Gulf Oil Corp., 792 F.2d 432, 434-35 (4th Cir. 1986);

5

see also Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277-78 (6th Cir. 1991), cert. denied, 505 U.S. 1233 (1992).

HealthSouth maintains that because of Aetna's agreement with Red Cross, Aetna possessed either actual or apparent authority to confer beneficiary status on Eric Shaw. The district court correctly concluded, however, that any discretionary authority over administration of the Plan rested solely with Red Cross. See 29 C.F.R. § 2509.75-8 (1994); see also Haidle v. Chippenham Hosp., Inc., 855 F. Supp. 127, 131-32 (E.D. Va. 1994); Baker Hosp. v. Aetna Life Ins. & Casualty Co., No. 91-2004, 1991 WL 179113 (unpublished) (4th Cir. October 25, 1991).[1] In order to have the authority to amend or alter an ERISA plan, Aetna would have to be a fiduciary and thus, be cloaked with discretionary control respecting management of the Plan, including the authority to dispose of Plan assets. 29 U.S.C.§ 1002(21)(A). Given Aetna's limited role in processing claims under the Plan and reading a computer screen to determine who is and who is not covered, it is clear that Aetna is not a fiduciary under the Plan. See Baxter v. C.A. Muer Corp., 941 F.2d 451 (6th Cir. 1991) (a claims processor that only had the power to pay out benefits according to the terms of the established plan was not an ERISA fiduciary); Baker v. Big Star Div. of the Grand Union Co., 893 F.2d 288, 290 (11th Cir. 1989) ("An insurance company does not become an ERISA`fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer."); Haidle,

_____

[1] Although the opinion in Baker Hospital is unpublished and does not constitute precedential authority pursuant to Local Rule 36(c), we find its reasoning persuasive. In Baker Hospital, a hospital called Global Associates, Inc. (Global), the plaintiff's employer, to verify coverage for Sally Reese Warren, as directed on the Aetna insurance benefit card. Thus, Global was performing the same sort of administrative duties for the Aetna insured policy in that case, as Aetna performs for the Plan at issue before us. Id. at *1-*2. In addition, just like the Aetna/Red Cross card at issue here, the Global/Aetna card stated that it did not guarantee coverage. Id. at *2. Even though a Global employee assured the hospital that Sally Reese Warren was covered, we held that Global was not a fiduciary and as a non-fiduciary, its administrative processing decisions could not bind Aetna. Id. at *2. The panel also held that Aetna did not breach its fiduciary duties by delegating non-fiduciary authority to Global. Id. at *2-*3.

6

855 F. Supp. at 131-32 (Processing and paying claims are administrative, not discretionary functions, and an entity seized of the obligation to simply make determinations about who and what is covered by looking at the Plan's clearly established language is not an ERISA fiduciary.).

However, even if Aetna were a fiduciary, the oral statements made by it would be insufficient to modify the terms of an established ERISA plan. In Biggers v. Wittek Indus., Inc. , 4 F.3d 291 (4th Cir. 1993), we held that oral and informal amendments to established ERISA plans are completely incapable of altering the specified terms of the plan's written coverage. Id. at 295; see also Coleman v. Nationwide Life Ins. Co., 969 F.2d 54, 58-59 (4th Cir. 1992), cert. denied, 506 U.S. 1081 (1993). ERISA requires that a plan be"established and maintained pursuant to a written instrument," 29 U.S.C.A. § 1102(a)(1), and that said written instrument must describe the formal procedures pursuant to which the plan can be amended, 29 U.S.C.A. § 1102(b)(3). Based on that clear statutory directive we have concluded that in order to be effective, "any modification to a plan must be implemented in conformity with the formal amendment procedures and must be in writing." Id. at 58.

Appendix I to the Red Cross Plan states that Red Cross's Board of Governors is the entity with the power to approve or reject amendments to the Plan after recommendation by the Board of Trustees. Aetna, therefore, does not have the authority to effect unilateral modifications to the Plan by giving erroneous information to potential benefit claimants like HealthSouth. Thus, nothing in the Plan, the Red Cross/Aetna contract, or any other written document before this court indicates that Aetna may unilaterally alter the plan by bestowing beneficiary status upon a previously non-covered individual. In short, if we adopted HealthSouth's position, the Plan at issue would be modified such that someone not entitled to benefits would be found entitled to benefits. That result flies in the face of ERISA's clear statutory language. See Coleman, 969 F.2d at 59. Accordingly, the district court correctly granted summary judgment to Red Cross on HealthSouth's modification claims.

IV.

HealthSouth also contends that it was not given an adequate opportunity to complete discovery. This argument is without merit.

7

A district court should refuse to grant summary judgment when an opposing party needs additional time to complete discovery and properly respond to the motion. See Anderson v. Liberty Lobby, 477 U.S. 242, 251 n.5 (1986). In the instant matter, however, HealthSouth was provided with a copy of the Aetna/Red Cross contract as well as all other documents relevant to its standing to sue Red Cross. Unfortunately for HealthSouth, it simply has no derivative standing to bring an ERISA claim based on any actions taken by Aetna. No amount of discovery could have unearthed information which would contravene the clear language of the Plan and disturb the fact that Eric Shaw never was a Plan beneficiary.

V.

Apparently realizing the minimal chance of success on its modification claims, HealthSouth further maintains that the district court erred when it refused to allow it to amend its complaint to add an estoppel cause of action against Red Cross. We disagree.

The decision to grant a party leave to amend its pleadings rests within the sound discretion of the district court. See Sandcrest Outpatient Serv. v. Cumberland County Hosp. Sys., 853 F.2d 1139, 1148 (4th Cir. 1988). Nevertheless, it is well settled that, "in the absence of any apparent or declared reason--such as undue delay, bad faith, or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.--the leave sought should, as the rules require, be freely given." Foman v. Davis, 371 U.S. 178, 182 (1962). Moreover, delay in requesting the amendment is generally not a sufficient reason, by itself, to deny the requested motion. See Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir.), cert. dismissed, 448 U.S. 911 (1980). Delay, however, can be a sufficient reason for denial of leave when accompanied by futility or prejudice to the non-movant. See Deasy v. Hill, 833 F.2d 38, 40 (4th Cir. 1987), cert. denied, 485 U.S. 977 (1988). Lastly, as long as its reasons are apparent, a district court's failure to articulate grounds for denying a plaintiff's leave to amend does not amount to an abuse of discretion. See Island Creek Coal Co. v. Lake Shore, Inc., 832 F.2d 274, 279 (4th Cir. 1987).

According to HealthSouth, because Aetna is Red Cross's agent for the purpose of health benefit determinations, Aetna's declaration of

8

coverage for Eric Shaw is binding on Red Cross. This is a claim that "sounds" in both state and federal promissory estoppel. HealthSouth concedes that it does not have any state law promissory estoppel claim because any such state claim falls within ERISA's broad pre-emption provision. See 29 U.S.C.A. § 1144; see also Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983) (ERISA preemption is construed broadly and displaces any state law which relates to an ERISA plan or "if it has a connection with or reference to such a plan.").

Nor can HealthSouth proceed with a federal common law estoppel claim, for we have already squarely rejected such a contention. See Singer v. Black & Decker Corp., 964 F.2d 1449, 1452 (4th Cir. 1992) ("[R]esort to federal common law generally is inappropriate when its application would conflict with the statutory provisions of ERISA, . . . or threaten to override the explicit terms of an established ERISA plan."); see also Degan v. Ford Motor Co., 869 F.2d 889, 895 (5th Cir. 1989) (Use of estoppel principles to bring about an oral modification of a written ERISA plan would conflict with ERISA's preference for written agreements.). We have never recognized estoppel arguments which would serve to vary the terms of a written plan, see Coleman, 969 F.3d at 54,**2** a fact which HealthSouth cannot avoid. We are aware that leaving HealthSouth to bear the cost of Eric Shaw's hospital stay is an unsatisfying conclusion. However, ERISA simply does not recognize the validity of oral or non-conforming written modifications to ERISA plans. See 29 U.S.C.§§ 1102(a)(1), and 1102(b)(3).

_____

**2** HealthSouth seeks to avoid our rulings which have disallowed oral modifications by claiming that no modification of the Plan at issue is necessary. According to HealthSouth, Eric Shaw could be a beneficiary under the Plan so there is no need to change the Plan's terms in order to afford it the relief it seeks. Essentially, HealthSouth maintains that all Aetna did was "interpret" the Plan's terms and designate Eric Shaw a beneficiary -- all without modifying the Plan at all. Unfortunately for HealthSouth, we have already addressed this very sort of "interpretation" argument and rejected it in Coleman, 969 F.2d at 59 (Estopping a Plan Administrator from denying benefits to an individual who was not a participant, nor a beneficiary, would have the unmitigated effect of modifying the Plan's written terms--a result that is in clear conflict with the statute's requirements.).

9

The decisions of Elmore v. Cone Mills Corp., 23 F.3d 855 (4th Cir. 1994), and Hall v. Cropmate, 887 F. Supp. 1193 (S.D. Ind. 1995), do not require a different result. HealthSouth cites Elmore for the proposition that a fiduciary in an ERISA action can now be estopped from denying plan coverage based on oral assertions made to a claimed beneficiary. That reliance is misplaced.

In Elmore, this court, sitting en banc , addressed the question of whether estoppel principles could be used to bind a plan fiduciary to oral modifications made before terms of the plan were written down and became binding. 23 F.3d at 863. The plan at issue in Elmore was adopted subsequent to the contract that formed the basis for the plaintiff's estoppel claim. Id. at 868. Thus, the alleged beneficiaries in Elmore did not seek to alter a pre-existing ERISA plan, they merely asked that a contract entered into prior to the ERISA plan's adoption be given binding effect. Id. The district court held that an estoppel claim could go forward on those facts. An equally divided en banc court affirmed that decision.

Thus, Elmore carries no precedential weight, see Arkansas Writers' Project v. Ragland, 481 U.S. 221, 234 n.7 (1987), and HealthSouth's reliance on Elmore fails on that basis alone. In any event, a careful reading of the different opinions in Elmore shows that four of the judges who would have allowed an estoppel claim on the facts presented in Elmore would also reject HealthSouth's argument here. Judge Murnaghan took great pains in his concurring opinion, in which three other judges joined, to distinguish Elmore  on its facts from Coleman and Singer. See Elmore 23 F.3d at 868-69 (Murnaghan, J., concurring). In determining that the district court was correct when it allowed the estoppel argument to proceed, Judge Murnaghan clearly did not take issue with either Singer or Coleman. Id. at 869. Specifically, Judge Murnaghan stated:

> Prior existence of the Plan when the contract was formed might have caused problems to arise. In Coleman v. Nationwide Life Ins. Co., we held that estoppel principles cannot be used to effect a modification of an existing ERISA benefit plan. In such a case, adoption of an estoppel theory "would require this court to rewrite the contract of insurance . . . ." Id. at 56 . . . . I have no quarrel with any of these prior

10

> decisions in their proper context. However, here the Plan was created <u>subsequent</u> to the contract, so no such Plan existed when the contract came into existence.

<u>Id.</u> Consequently, even under Judge Murnaghan's approach in <u>Elmore</u>, <u>Coleman</u> and <u>Singer</u> mandate the failure of HealthSouth's estoppel claim here.

Similarly, <u>Hall v. Cropmate</u> is of no help to HealthSouth. In <u>Hall</u>, the district court for the Southern District of Indiana concluded that an estoppel claim could proceed on facts quite similar to the case before us. 887 F. Supp. 1193. The Indiana district court held that when an individual's claim concerns whether coverage is afforded by the plan, no modification need be undertaken, and an estoppel claim is cognizable in that instance. <u>Id.</u> at 1197. Although the district court's reasoning in <u>Hall</u> supports HealthSouth's argument, we will not, and cannot overturn our clear precedent in order to follow the Southern District of Indiana.**3** Again, <u>Coleman</u> made it clear that when a non-beneficiary seeks to obtain benefits pursuant to an ERISA plan, any change to that plan, or interpretation of that plan, is a modification which is prohibited by ERISA's plain language. <u>Coleman</u>, 969 F.2d at 59.

In summary, we affirm the district court's refusal to allow Health-South to amend its complaint because allowing the amendment would have been futile and would have, at most, delayed the inevitable dismissal of all of HealthSouth's claims against Red Cross. <u>See Deasy</u>, 833 F.2d at 40.

_____

**3** The decision by the Indiana district court may not be completely without support in the context of Seventh Circuit jurisprudence. <u>Hall</u> principally relied on <u>Miller v. Taylor Insulation Co.</u>, 39 F.3d 755 (7th Cir. 1994), a case which apparently recognized the possibility of a promissory estoppel claim in the ERISA context. ". . . Taylor may be estopped to deny that Miller is a participant." <u>Id.</u> at 758. However, based on the authority of <u>Coleman</u>, which is the controlling authority in this Circuit, and the reasons set forth herein, HealthSouth cannot establish a promissory estoppel claim. HealthSouth proposes an oral modification to the Plan and <u>Coleman</u> rejects a claim of that nature. <u>But see id.</u>, at 759.

11

VI.

For the reasons stated herein, the judgment of the district court is affirmed.

AFFIRMED

12