Willis Hope WHITE, Plaintiff–Appellant,

v.

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY,
Defendant–Appellee.

No. 96–1695.

United States Court of Appeals,
Fourth Circuit.

Argued April 10, 1997.

Decided May 19, 1997.

**ARGUED:** John Walter Fletcher, III, Fletcher & Rhoton, P.A., Charlotte, NC, for Appellant. William Pinkney Herbert Cary, Brooks, Pierce, McLendon, Humphrey &

Leonard, L.L.P., Greensboro, NC, for Appellee. **ON BRIEF:** Glenn E. Ketner, Jr., Salisbury, NC, for Appellant. John M. Cross, Jr., Brooks, Pierce McLendon, Humphrey & Leonard, L.L.P., Greensboro, NC, for Appellee.

Before WILKINSON, Chief Judge, and HAMILTON and MOTZ, Circuit Judges.

Affirmed by published opinion. Chief Judge WILKINSON wrote the opinion, in which Judge HAMILTON and Judge MOTZ joined.

## OPINION

WILKINSON, Chief Judge:

Willis White sued Provident Life and Accident Insurance Company, seeking a declaration that he was entitled to life insurance benefits under both a group policy and an individual conversion policy issued to White by Provident. The district court granted Provident summary judgment, and White appeals. Because the group policy and the right of conversion are governed by ERISA, and because their plain terms prohibit White from recovering life insurance benefits under a group policy and an individual conversion policy, we affirm the judgment of the district court.

### I.

On October 26, 1981, Provident issued a Group Life Insurance Policy to the employees of White Packing Company. Willis White, an employee of the company, received $34,000 of coverage under the group policy. On October 31, 1981, White suffered chronic renal failure and, as a result, ceased working. Because of his total disability, White became entitled to continuous life coverage under the group policy with a waiver of premiums. This coverage remains in effect.

Under the terms of the group policy, a conversion policy was available to employees who no longer qualified for group coverage as a result of, for example, no longer being employed by the company. On July 16, 1984, White executed an "application for Conversion of Group Life Insurance to an Individual Life Insurance Policy" seeking to convert his coverage under the group policy to individual coverage. The group policy provides that an insured may not simultaneously sustain both group and individual coverage. White's application for a conversion policy identifies the $34,000 of coverage under the group policy as the "group life insurance terminated" in conjunction with the issuance of an individual policy.

On August 1, 1984, Provident mistakenly issued White an individual conversion policy. The face value and material terms of the policy were the same as that of the life coverage under the group policy. White tendered premiums for the conversion policy from the time the policy was issued until the summer of 1988.

In the summer of 1988, Provident discovered it had erroneously issued a conversion policy to White. Immediately after this discovery, on August 3, 1988, Provident notified White that he could not maintain simultaneous coverage under the group policy and the conversion policy. Provident told White that the individual policy had been issued by mistake and that it should be returned. Provident repaid all premiums previously paid by White under the individual conversion policy. White, however, refused to accept the repayment and refused to return the individual policy. Provident has accepted no further premium payments from White.

White filed suit in state court seeking a declaratory judgment that he was entitled to coverage under both the group and individual policies. Provident removed the case to federal court on the grounds that White's claims were preempted by ERISA. Both parties moved for summary judgment, and the district court granted summary judgment for Provident. White appeals.

### II.

#### A.

■ White first contends that ERISA does not govern this case. White concedes that the group policy is an ERISA benefits plan. He argues, however, that the individual conversion policy constitutes a distinct contract between himself and Provident whose

relation to the group policy is too tenuous and remote for ERISA to apply.

The majority of courts which have examined the issue of whether ERISA applies to conversion policies have found ERISA to be applicable. Those cases reason that the right of conversion is a benefit required by ERISA, *see* 29 U.S.C. §§ 1161 & 1162, and that the entire existence of a conversion policy rests on the conversion right found in an ERISA plan. In a case analogous to the one at hand, for instance, the Ninth Circuit stated:

> The group plan in this case, which the [plaintiffs] admit is an ERISA plan, provides for the conversion benefit. Because the [plaintiffs] would not be eligible for a conversion policy without first belonging to the class of beneficiaries covered by the ERISA group plan, we conclude that the individual conversion benefits are part of the ERISA plan and are thus governed by ERISA.

*Greany v. Western Farm Bureau Life Insurance*, 973 F.2d 812, 817 (9th Cir.1992). Similarly, the Eleventh Circuit has found that a converted policy is covered by ERISA because the "ability to obtain the converted life insurance policy arose from the ERISA plan, and the converted policy itself continued to be integrally linked with the ERISA plan." *Glass v. United of Omaha Life Insurance*, 33 F.3d 1341, 1347 (11th Cir.1994); *see also Beal v. Jefferson–Pilot Life Insurance*, 798 F.Supp. 673, 675 (S.D.Ala.1992); *Nechero v. Provident Life & Accident Insurance*, 795 F.Supp. 374, 378–80 (D.N.M.1992); *Rasmussen v. Metropolitan Life Insurance*, 675 F.Supp. 1497, 1506 (W.D.La.1987). Even the minority of courts which have found ERISA inapplicable to claims arising under the terms of conversion policies have agreed that ERISA applies to cases dealing with the right to convert. *See Vaughn v. Owen Steel Co.*, 871 F.Supp. 247, 249 · (D.S.C.1994); *Mimbs v. Commercial Life Insurance*, 818 F.Supp. 1556, 1561 (S.D.Ga.1993).

We need not adopt one view or the other for purposes of this case, because even under the minority view, ERISA governs the right of conversion to an individual policy. Since White's claims are clearly related to the conditions placed by the group policy on the right of conversion, his claims must be governed by ERISA. It is clear that under this ERISA plan, a beneficiary may claim coverage under either the group policy or a conversion policy, but not both. The group policy states:

> If a converted policy is issued under the plan, it must be returned without claim before insurance will be continued under [the group policy]. Any premiums paid for the converted policy will be returned to you.

The group policy goes on to indicate that "the Insurance Company will pay to the beneficiary of record the amount of the Employee's life insurance ... *less the amount of any individual policy issued in accordance with the conversion privilege and in force at death.*" (emphasis added). In addition to these prohibitions, the group policy adds that "nothing will be paid under the [conversion policy] if any amount is paid under the [group policy]."

◼ The group policy thus allows an insured to obtain individual conversion coverage as an alternative, but not in addition to, group coverage. The written terms of this ERISA plan plainly prohibit simultaneous recovery under the group policy and a conversion policy, and ERISA demands adherence to the clear language of this employee benefit plan. *See* 29 U.S.C. §§ 1102(a)(1) & 1102(b)(3).

### B.

◼ White argues that Provident should not be allowed to apply the clear language of the ERISA plan because of an incontestability clause in that plan. That clause states that there "will be no contest of an Employee's coverage after it has been in force for two years from the date of coverage." White maintains that since he has been covered under the group policy since 1984, this clause acts to prohibit Provident from denying recovery under the group policy.

White's contention, however, misses the point. An incontestability clause prevents an insurer from contesting the validity of an insurance contract. However, such a clause

certainly does not prevent the insurer from invoking the plain terms of an ERISA plan. The issue here is not whether the group policy is valid, but rather whether it forbids a double recovery. The ERISA plan plainly includes such a prohibition, and Provident was entitled to assert it.

### C.

■ Provident accepted premiums from White on the individual conversion policy from 1984 through 1988. Upon the discovery of its mistake in 1988, Provident immediately attempted to repay these premiums. White refused to accept this repayment and now asserts that Provident's mistaken acceptance of premiums constituted a waiver of its right to deny a dual recovery. White, of course, cannot premise this waiver theory on state law. ERISA preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). In *Holland v. Burlington Industries*, 772 F.2d 1140 (4th Cir.1985), we specifically held that state law waiver and estoppel claims were preempted by ERISA, noting that such claims pose a risk of creating "conflicting employer obligations and variable standards of recovery." 772 F.2d at 1147. This is precisely the result that ERISA's broad preemption clause was enacted to avoid. *Id.*

■ Nor can White rely on the federal common law under ERISA, which does not incorporate the principles of waiver and estoppel. As we recently noted in *HealthSouth Rehabilitation Hospital v. American National Red Cross*, 101 F.3d 1005 (4th Cir. 1996), "ERISA simply does not recognize the validity of oral or non-conforming written modifications to ERISA plans." *Id.* at 1010. In this case, White cannot even point to any explicit assurances by Provident that he was entitled to double coverage. Rather, he would have us hold that Provident's mistaken acceptance of premiums constituted a knowing waiver of rights that is in direct conflict with the plain written terms of an ERISA plan. ERISA, however, does not provide for such unwritten modifications of ERISA plans. *See* 29 U.S.C. § 1102(a)(1) (requiring that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument"); 29 U.S.C. § 1102(b)(3) (requiring that an ERISA plan describe the formal procedures by which the plan may be amended). Therefore, White's waiver argument cannot prevail.

### III.

We note in conclusion that White may prove to be his own worst enemy in this case. Even if White were able to convert to an individual policy, the net result would be that he would pay premiums for coverage to which he is entitled under the group policy for free. Fortunately for White, the insurer in this case sought only the return of a conversion policy as provided for in the ERISA plan. It is clearly entitled to such a return, and we thus affirm the judgment of the district court.

*AFFIRMED.*