**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

MARTA KOROTYNSKA, Individually
and on behalf of all others similarly
situated,
       *Plaintiff-Appellant,*

       and

CHERAY BRYANT, Individually and
on behalf of all others similarly
situated,
       *Plaintiff,*

       v.

METROPOLITAN LIFE INSURANCE
COMPANY,
       *Defendant-Appellee.*

No. 05-1613

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
J. Frederick Motz, District Judge.
(CA-04-3601-1-JFM)

Argued: October 26, 2006

Decided: December 13, 2006

Before WILKINSON, NIEMEYER, and WILLIAMS,
Circuit Judges.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion,
in which Judge Niemeyer and Judge Williams joined.

---

**COUNSEL**

**ARGUED:** John Bucher Isbister, TYDINGS & ROSENBERG, Baltimore, Maryland, for Appellant. Kathleen Mary McKenna, PROSKAUER & ROSE, L.L.P., New York, New York, for Appellee. **ON BRIEF:** Jason Newfield, Justin Frankel, FRANKEL & NEWFIELD, P.C., Garden City, New York; Edward O. Comitz, Andrew S. Friedman, BONNETT, FAIRBOURN, FRIEDMAN & BALINT, P.C., Phoenix, Arizona; Lawrence J. Quinn, TYDINGS & ROSENBERG, Baltimore, Maryland, for Appellant. Stephanie L. Marn, PROSKAUER & ROSE, L.L.P., Washington, D.C.; Tracey Rogers, PROSKAUER & ROSE, L.L.P., New York, New York, for Appellee.

---

**OPINION**

WILKINSON, Circuit Judge:

The plaintiff in this case alleges that defendant fiduciary breached its duties to her and other benefits plan participants by engaging in improper claims procedures designed to deny valid claims for long-term disability benefits. She seeks equitable relief under Section 502(a)(3) of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1132(a)(3). The district court found that the form of relief requested was not available under ERISA and thus granted the defendant's motion for judgment on the pleadings.

We affirm. Individualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions. *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). Because adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § 1132(a)(1)(B), relief under § 1132(a)(3) will not lie.

I.

Plaintiff Marta Korotynska brings this action on behalf of herself and others similarly situated against defendant Metropolitan Life Insurance Company ("MetLife") under the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.* (2000). The action was originally brought in the United States District Court for the Southern District of New York but was transferred to the United States District Court for the District of Maryland pursuant to 28 U.S.C. § 1404. No class has been certified, and Korotynska is currently the sole plaintiff.

MetLife issues group insurance policies which fund employee benefit plans sponsored by employers, including disability plans. For some plans, MetLife acts as plan fiduciary, managing the operation and administration of the benefit plan. Plaintiff Korotynska, through her previous employment as an audio-visual librarian at Montgomery Community College in Maryland, was a participant in a disability plan for which MetLife acted as insurer and fiduciary. Korotynska is no longer employed by Montgomery Community College or otherwise covered by a MetLife disability insurance plan.

Around August 2000, Korotynska filed a claim for, and received, short-term disability benefits due to "severe and disabling chronic pain, degenerative disc problems in her back, and fibromyalgia." After these short-term disability benefits expired, Korotynska filed a claim for long-term disability benefits. MetLife determined that Korotynska was eligible for such benefits and paid her for two years beginning in August 2001. In August 2003, however, MetLife conducted a review of Korotynska's claim and terminated her benefits. Korotynska appealed the adverse benefit determination, and on June 3, 2004, MetLife affirmed its decision to terminate.

In this action, Korotynska maintains that she is not seeking individualized review of her adverse benefits determination under 29 U.S.C. § 1132(a)(1)(B). Instead, Korotynska seeks equitable relief under 29 U.S.C. § 1132(a)(3). Section 1132(a)(3) provides, "A civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

Korotynska seeks equitable relief under § 1132(a)(3) for MetLife's alleged violations of 29 U.S.C. § 1104, another provision of the same

subchapter which outlines fiduciary duties under ERISA. Specifically, Korotynska alleges that MetLife has breached its fiduciary duties by engaging in systematically flawed and abusive claims administration procedures, including, *inter alia*,

a.    Targeting types of claims that have self-reported symptoms, lack of objective medical findings supporting the claims, or an undefined diagnosis, without due regard for the actual impact of the claimants' conditions on their ability to work;

b.    Targeting low-benefit claimants for denial and/or termination with the expectation that such claimants will not have the wherewithal or financial incentive to engage counsel to pursue their rights, or have the physical or emotional fortitude to fight over these benefits;

c.    Employing claim practices that ignore treating physician opinions, ignore subjective complaints of pain, and/or ignore the effects of medications upon claimants' abilities to work;

d.    Failing to consider in its handling of these claims, pursuant to 29 C.F.R. § 2560.503-1(h)(2)(iv), all comments, documents, records and other information submitted by the claimant relating to the claim;

e.    Requesting inappropriate, unnecessary and burdensome materials from claimants, all in furtherance of delaying claims determinations;

f.    Designing a system in which claimants cannot receive a full and fair review of their claims, by virtue of its reliance upon Medical Examinations from Interested Physicians (called "Independent" Medical Examinations), Functional Capacity Evaluations ("FCE's") and/or peer reviews;

g.    Utilizing the services of professional entities that perform medical and/or vocational reviews, including but not

limited to National Medical Review, that are biased against claimants based upon financial incentives provided by Met Life;

h.   Developing and utilizing claim management plans that are designed to terminate benefits not based upon the actual condition of claimants, but, rather, upon duration guidelines used to determine when to terminate claims;

i.   Developing claim management plans to deny or termi-nate claims without due regard for the actual impact of the claimants' conditions on their ability to work; and

j.   By employing numerous other practices that pressure claims handling personnel into denying or terminating legit-imate claims.

Under § 1132(a)(3), Korotynska seeks reform of "the systemic improper and illegal claims handling practices that [MetLife] uses to deny her and other ERISA beneficiaries a full and fair review of their claims for disability benefits and a full and fair review of claims (including Ms. Korotynska's) that have been denied or terminated," as well as other appropriate equitable relief.

MetLife filed a Rule 12(c) motion for judgment on the pleadings, arguing that Korotynska lacked standing to bring the action and that Korotynska was not entitled to bring a claim for equitable relief under § 1132(a)(3), because adequate relief was available to her through § 1132(a)(1)(B). The district court held that, although Korotynska had standing, under *Varity Corp. v. Howe*, 516 U.S. 489 (1996), equitable relief was only available for injuries not adequately redressed else-where in ERISA's statutory scheme. Because Korotynska "ha[d] available to her the alternative remedy of bringing an action under [§ 1132(a)(1)(B)]," her action under § 1132(a)(3) was dismissed. *Korotynska v. Metro. Life Ins. Co.*, No. Civ. JFM-04-3601, slip op. at 8 (D. Md. Apr. 28, 2005). Korotynska appealed, and MetLife con-tests the district court's standing determination.

We review de novo a district court's decision to grant judgment on the pleadings. *See Burbach Broad. Co. of Del. v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002).

II.

Assuming that Korotynska's previous denial of benefits and alleged subjection to improper claims procedures qualify her to bring a claim under § 1132(a)(3),[1] that statutory provision is only available for claims of breach of fiduciary duty in the circumstances outlined by the Supreme Court in *Varity*. *See* 516 U.S. at 507-15. In *Varity*, the Supreme Court held that § 1132(a)(3) authorizes some individualized claims for breach of fiduciary duty, but not where the plaintiff's injury finds adequate relief in another part of ERISA's statutory scheme. *Id.* at 512, 515. The Court, taking both parts of § 1132(a)(3) as one whole, concluded that the provision creates a "catchall" which "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations that [§ 1132] does not elsewhere adequately remedy." *Id.* at 512. But "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief normally would not be 'appropriate.'" *Id.* at 515.

*Varity* itself provides an example of an injury that did not find adequate relief in other provisions of ERISA. The *Varity* plaintiffs suffered an injury when their employer consolidated many of its unprofitable divisions into a new subsidiary and then persuaded employees to transfer their benefit plans to the new subsidiary through deceptive depictions of its financial outlook. *Id.* at 493-94. When the subsidiary failed and the employees lost their nonpension benefits, many sued for reinstatement of the benefits they would have been owed under their previous plan. *Id.* at 494. The Supreme Court found:

> The plaintiffs in this case could not proceed under [§ 1132(a)(1)] because they were no longer members of the [original] plan and, therefore, had no benefits due them

---

[1] The district court gave no credence to MetLife's contention that Korotynska had waived her claim to individual benefits review. The district court found that the previous denial of her benefits claim gave her a "colorable claim as to benefits" sufficient to confer statutory standing and constituted an injury redressable by the requested relief for purposes of Article III standing.

under the terms of the plan. They could not proceed under [§ 1132(a)(2)] because that provision, tied to [§ 1109], does not provide a remedy for individual beneficiaries. They must rely on [§ 1132(a)(3)] or they have no remedy at all.

*Id.* at 515 (citations and internal quotation marks omitted). Because the *Varity* plaintiffs had "no remedy at all" for their injuries under the other provisions of ERISA, equitable relief under § 1132(a)(3) was "appropriate" and thus authorized by the statute. *Id.*

## A.

The question under *Varity*, then, is whether the claimant's injury is addressed by ERISA's other provisions and whether those provisions afford adequate relief. If so, equitable relief under § 1132(a)(3) will normally not be "appropriate." *Id.*

As an initial matter, there is no question that what plaintiff is pressing is a claim for individual benefits. It originated as such, with her filing of claims for short-term and then long-term disability benefits under the plan. When her long-term disability benefits were terminated, she appealed their termination to the plan administrator. In her amended complaint, the only injury of which she complains is the termination of benefits and the resulting financial harm to her. In the current litigation, plaintiff has insisted that she has not renounced her claim for benefits and has admitted that her whole purpose in seeking § 1132(a)(3) relief is to enable her to recover the benefits to which she is entitled.

There is also no question that Korotynska's injury is redressable elsewhere in ERISA's scheme. Plaintiff complains that MetLife's allegedly improper claims procedures injured her by leading to the denial of benefits to which she was rightly entitled. Another provision of ERISA squarely addresses plaintiff's injury: Under § 1132(a)(1)(B), a plan participant may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B).

Section 1132(a)(1)(B) allows plan participants to obtain individualized review of an allegedly wrongful denial of benefits. The plaintiff's injury here — denial of benefits by the plan administrator — plainly gives rise to a cause of action under § 1132(a)(1)(B) and as such would usually be appealed under that provision. *See, e.g.*, *Donovan v. Eaton Corp., Long Term Disability Plan*, 462 F.3d 321, 323 (4th Cir. 2006) (appeal of denial of disability benefits under § 1132(a)(1)(B)); *Brogan v. Holland*, 105 F.3d 158, 159 (4th Cir. 1997) (same). The plaintiff herself admits that ERISA provides her with relief outside of § 1132(a)(3) and that she "could also seek a review of a wrongful denial of benefits under [§ 1132(a)(1)(B)]." The fact that the plaintiff has not brought an § 1132(a)(1)(B) claim does not change the fact that benefits are what she ultimately seeks, and that redress is available to her under § 1132(a)(1)(B).

## B.

Nevertheless, plaintiff claims that § 1132(a)(3) relief is "appropriate" under *Varity*, because review under § 1132(a)(1)(B) would not afford her "adequate" relief. But *Varity* itself undermines this contention. In *Varity*, the Supreme Court identified the danger that a beneficiary might "repackage his or her 'denial of benefits' claim as a claim for 'breach of fiduciary duty.'" 516 U.S. at 513. The Court found this risk "unlikely to materialize," however, in part because "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." *Id.* at 514, 515. In suggesting that Congress "provided adequate relief" for a "denial of benefits" claim without recourse to § 1132(a)(3), the Supreme Court intimated that equitable relief for breach of fiduciary duty would not be available for denial of benefits claims appealable under § 1132(a)(1)(B).

Although the Second Circuit has held that plaintiffs may seek relief simultaneously under § 1132(a)(1)(B) and § 1132(a)(3), *see Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89-90 (2d Cir. 2001), the great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3). *See, e.g.*, *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir. 2006); *Ogden v. Blue Bell Creameries U.S.A., Inc.*, 348 F.3d 1284, 1287-88

(11th Cir. 2003); *Tolson v. Avondale Indus., Inc.*, 141 F.3d 604, 610-11 (5th Cir. 1998); *Wilkins v. Baptist Healthcare Sys., Inc.*, 150 F.3d 609, 615-16 (6th Cir. 1998); *Forsyth v. Humana, Inc.*, 114 F.3d 1467, 1474-75 (9th Cir. 1997); *Wald v. Sw. Bell Corp. Customcare Medical Plan*, 83 F.3d 1002, 1006 (8th Cir. 1996).

These courts have not allowed claimants to proceed with § 1132(a)(3) claims where relief was potentially available to them under § 1132(a)(1)(B), because, in *Varity*, "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins*, 150 F.3d at 615. A plaintiff whose injury consists of a denial of benefits "has adequate relief available for the alleged improper denial of benefits through his right to sue [the benefit plan] directly under section 1132(a)(1)," and thus "relief through the application of Section 1132(a)(3) would be inappropriate." *Tolson*, 141 F.3d at 610. To allow a claim under § 1132(a)(3) would permit "ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected." *Wilkins*, 150 F.3d at 616.

## C.

We join our sister circuits and hold that § 1132(a)(1)(B) affords the plaintiff adequate relief for her benefits claim, and a cause of action under § 1132(a)(3) is thus not appropriate. Plaintiff insists that § 1132(a)(1)(B) is inadequate because, "[u]nless MetLife is required to answer for its actions under [§ 1132(a)(3)], its illegal practices will remain free from scrutiny." But this is not the case. This court has held that review of a benefits determination under § 1132(a)(1)(B) should consider, among other factors, "whether the decisionmaking process was reasoned and principled," "whether the decision was consistent with the procedural and substantive requirements of ERISA," and "the fiduciary's motives and any conflict of interest it may have." *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342-43 (4th Cir. 2000).[2] These factors address exactly the

---

[2]"[A] court may consider, but is not limited to, such factors as: (1) the language of the plan; (2) the purposes and goals of the plan; (3) the ade-

kinds of procedural deficiencies alleged by the plaintiff, in the context of review of actual benefits claims under § 1132(a)(1)(B).

Nor is there a basis to conclude that review of claims procedures in such a context affords relief that is other than adequate. Other circuits have held the remedy set forth by Congress in § 1132(a)(1)(B) adequate to redress injuries arising from the denial of benefits. *See, e.g.*, *Antolik*, 463 F.3d at 803; *Ogden*, 348 F.3d at 1287-88; *Wilkins*, 150 F.3d at 615-16; *Forsyth*, 114 F.3d at 1474-75. In considering the adequacy of the remedy expressly provided by Congress, it is important to recognize that ERISA is a "comprehensive and reticulated statute," whose "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (internal citations and quotation marks omitted). Courts should therefore be "especially reluctant to tamper with the enforcement scheme embodied in the statute by extending remedies not specifically authorized by its text." *Id.* (internal quotation marks omitted).

It would certainly be improvident to do so here. Not only is relief available to the plaintiff under § 1132(a)(1)(B), but the equitable relief she seeks under § 1132(a)(3) — the revision of claims procedures — is pursued with the ultimate aim of securing the remedies afforded by § 1132(a)(1)(B). The plaintiff admits that she reserves her § 1132(a)(1)(B) claim so that she might bring it at a later date under reformed claims procedures achieved through the current litigation. It may be that plaintiff perceives in § 1132(a)(3) a clearer path to § 1132(a)(1)(B) relief while possibly circumventing § 1132(a)(1)(B)'s standard of review of abuse of discretion. But *Varity* allows equitable

---

quacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have." *Booth*, 201 F.3d at 342-43.

relief when the available remedy is inadequate, not when the legal framework for obtaining that remedy is, to the plaintiff's mind, undesirable. "To permit the suit to proceed as a breach of fiduciary duty action would encourage parties to avoid the implications of section 502(a)(1)(B) by artful pleading." *Coyne & Delany Co. v. Blue Cross & Blue Shield of Va., Inc.*, 102 F.3d 712, 714 (4th Cir. 1996).

D.

Finally, this case is not the exceptional one accommodated in *Varity*'s observation that adequate legal relief would "normally" make equitable relief inappropriate. 516 U.S. at 515. The allegations made by Korotynska are routinely taken up in appeals of benefits denials, and they do not constitute special circumstances for which equitable relief is uniquely appropriate. Indeed, if equitable relief were available here, "*every* wrongful denial of benefits could be characterized as a breach of fiduciary duty."[3] *Coyne*, 102 F.3d at 714. Plaintiff's approach would promote § 1132(a)(3) from "safety net" to first line of attack, an outcome at odds with both the plain language of § 1132(a)(1)(B) and the statutory structure of § 1132. *See Varity*, 516 U.S. at 512. An approach whereby § 1132(a)(3) review supplanted § 1132(a)(1)(B) review upon a mere allegation of improper claims procedures would make equitable relief the norm rather than the exception, an outcome the Supreme Court in *Varity* expressly disavowed.

Nothing we have said undermines the ability of plan participants to seek recoveries to the benefit plan under § 1132(a)(2) for breaches

---

[3]Such concerns reveal the difficulty of the few cases that have allowed § 1132(a)(3) claims to proceed for injuries relating to denial of benefits. *See Devlin*, 274 F.3d at 90; *Keir v. UnumProvident Corp.*, No. Civ. 8781 (S.D.N.Y. Apr. 29, 2003); *Rawls v. Unum Life Ins. Co.*, 219 F. Supp. 2d 1063, 1067 (C.D. Cal. 2002). Although the plaintiff relies upon these cases for the proposition that she may proceed with a claim for equitable relief under *Varity*, they merely demonstrate that this approach would lead to a proliferation of cases under § 1132(a)(3). The approach followed in these cases would encourage "ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected." *Wilkins*, 150 F.3d at 616.

of fiduciary duty. *See* 29 U.S.C. §§ 1109, 1132(a)(2); *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985); *see also LaRue v. DeWolff, Boberg & Assocs., Inc.*, 450 F.3d 570, 573 (4th Cir. 2006); *Coyne*, 102 F.3d at 714. *See also* 29 U.S.C. § 1132(a)(5) (enabling the Secretary to "enjoin any act or practice which violates any provision of this title," as well as to "obtain other appropriate equitable relief"); *see, e.g.*, *Chao v. Malkani*, 452 F.3d 290, 292 (4th Cir. 2006). Similarly, our holding preserves the true purpose of § 1132(a)(3): to authorize individual equitable relief, not where plan administrators have made a mistake on an individual benefits determination, but where, as in *Varity*, ERISA's other provisions do not afford adequate relief. 516 U.S. at 515. Congress has struck a balance between providing effective judicial remedies on the one hand and embroiling plans in excessive litigation on the other. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54 (1987). Changing that balance is Congress's sole prerogative.

The judgment of the district court is therefore

*AFFIRMED*.