**Debbie McCRAVY, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

**C.A. No.: 2:08–1933–PMD.**

United States District Court,
D. South Carolina,
Charleston Division.

June 12, 2009.

Robert Edward Hoskins, Foster and Foster, Greenville, SC, for Plaintiff.

James Derrick Quattlebaum, Joshua D. Spencer, Haynsworth Sinkler Boyd, Greenville, SC, for Defendant.

### ORDER

PATRICK MICHAEL DUFFY, District Judge.

This matter is before the Court for review of Metropolitan Life Insurance Company's decision to not disburse benefits to Debbie McCravy under an accidental death and dismemberment plan governed by ERISA.[1] Defendant has filed a Memorandum in Support of Preemption of Plaintiff's State Law Claims, which, with the agreement of the parties, this Court treats as a Rule 12 Motion to Dismiss. For the reasons set forth herein, the Court grants in part and denies in part Defendant's Motion.

### BACKGROUND

Plaintiff Debbie McCravy ("Plaintiff" or "McCravy") is a full-time employee of Bank of America, and as an employee is eligible to participate in Bank of America's life insurance and accidental death and

---

1. Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461.

dismemberment plan ("the Plan"), which was issued and administered by Defendant Metropolitan Life Insurance Company ("Defendant" or "MetLife"), making it a fiduciary to Plaintiff under ERISA. There were several different aspects to this plan. If McCravy, the insured, were to suffer an accidental death or dismemberment, her beneficiaries would receive benefits. Also, if any of McCravy's dependents were to suffer an accidental death or dismemberment, McCravy, the insured, would receive benefits.

In 2007, McCravy's daughter, Leslie McCravy ("Leslie"), was tragically killed. Leslie was 25 years of age at the time of her death. Up until the time of her death, Leslie was named as a covered dependent on McCravy's insurance plan. McCravy had paid premiums, which had been accepted and retained by MetLife, to insure Leslie's life. Plaintiff asserts that this was a representation to her that Leslie was covered under the Plan, and claims that if Leslie had not been covered, she would have sought out different insurance coverage for her daughter. Plaintiff, who was the beneficiary of the policy in the event of her daughter's death, filed a claim for benefits under the Plan.

However, MetLife denied this claim on the grounds that Leslie was not eligible for coverage under the Plan because she was no longer a child within the definition of the Plan. The Plan provides that insureds may purchase accidental death and dismemberment coverage for "eligible dependent children." The Plan goes on to specifically define eligible dependent children as the children of the insured who are unmarried, dependent upon the insured for financial support, and either (a) under the age of 19 or (b) under the age of 24 if enrolled full-time in a college, high school, or other equivalent educational program. Since Leslie was 25 at the time of her death, she no longer fit the Plan's descrip-

tion of eligible dependent children, and therefore, in Defendant's view, was ineligible for coverage under the Plan. Plaintiff appealed MetLife's denial of her claim, but the denial was affirmed.

Plaintiff initiated the action against Defendant by filing a Complaint in this Court on May 18, 2008. Plaintiff seeks damages on a claim that Defendant's actions constituted breach of fiduciary duty under ERISA, 29 U.S.C. § 1104. In the alternative that if it is determined that Leslie was not eligible for coverage under the Plan, Plaintiff stated that the claim would therefore not be governed by ERISA. However, Plaintiff asserted that she would still be entitled to damages under state law claims for (1) negligence, (2) promissory estoppel, and (3) breach of insurance contract.

On July 14, 2008, the Court issued an ERISA case management Order instructing both parties how to proceed in the case provided they both agreed that all claims were governed by ERISA. However, the parties did not agree that this was the case, and on September 17, 2008, Defendant filed a "Memorandum in Support of Preemption of Plaintiff's State Law Claims," arguing that Plaintiff's three state law claims were preempted by ERISA. On September 22, Plaintiff filed a Reply to this Memorandum. In turn, Defendant filed a Reply to Plaintiff's Reply on October 2, to which Plaintiff filed a Sur–Reply on October 7. Plaintiff then filed two separate Notices of Supplemental Authority, the first on November 13 and the second on November 18. Defendant filed a Reply to these Notices on November 25, to which Plaintiff filed a Reply the same day.

The issue before the Court in this matter is whether or not Plaintiff's three claims brought under state law are preempted by ERISA. However, the procedural posture of this matter is somewhat unusual, in that no formal motion has been

filed. Instead, Defendant filed a document entitled Memorandum in Support of Preemption of Plaintiff's State Law Claims. The basis for this Memorandum is that Defendant claims that all of Plaintiff's claims are essentially claims that Defendant breached its fiduciary duty to Plaintiff under ERISA, and therefore all of Plaintiff's state law claims fail as a matter of law and should be dismissed from this action. Accordingly, this Court treats this Memorandum as a Motion to Dismiss under Federal Rule of Procedure 12(b)(6).[2]

### STANDARD OF REVIEW

A Rule 12(b)(6) motion should be granted only if, after accepting all well-pleaded allegations in the complaint as true, it appears certain that the plaintiff cannot prove any set of facts in support of his claims that entitles him to relief. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). The complaint should not be dismissed unless it is certain that the plaintiff is not entitled to relief under any legal theory that might plausibly be suggested by the facts alleged. *See Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). Further, "[u]nder the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the court to infer that all the required elements of the cause of action are present." *Wolman v. Tose*, 467 F.2d 29, 33 n. 5 (4th Cir.1972).

### ANALYSIS

### I. Defendant's Claim that Plaintiff's State Law Claims are Preempted by ERISA

ERISA pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." *White v. Provident Life & Accident Ins. Co.*, 114 F.3d 26, 29 (4th Cir.1997). "The scope of ERISA's pre-emption is deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Wilmington Shipping Co. v. New England Life Ins. Co.*, 496 F.3d 326, 342 (4th Cir.2007); *see also Aetna v. Davila*, 542 U.S. 200, 210, 124 S.Ct. 2488, 159 L.Ed.2d 312 (2004) ("The purpose of ERISA is to provide a uniform federal regulatory regime over employee benefit plans. To this end, ERISA includes expansive preemption provisions which are intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.' ") (internal citation omitted). Both the language and legislative history of that Act show that Congress intended ERISA to be the sole remedy for claims arising out of disputes regarding employee benefit plans. The Supreme Court has held that ERISA:

> set[s] forth a comprehensive civil enforcement scheme that represents a careful balancing of the need for prompt and fair claims settlement procedures against the public interest in encouraging the formation of employee benefit plans. The policy choices reflected in the inclusion of certain remedies and the exclusion of others under the federal scheme would be completely undermined if ERISA-plan participants and beneficiaries were free to obtain remedies under state law that Congress rejected in ERISA.

*Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 54, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (quoting *Massachusetts Mut. Life Ins. Co.*

---

**2.** Even though Defendant does not explicitly say in its "Memorandum in Support of Preemption of Plaintiff's State Law Claims" that it seeks to dismiss those claims under Rule 12(b)(6), Plaintiff treated this document as a Motion to Dismiss under 12(b)(6) in her Reply to Defendant's Memorandum. In later correspondence with this Court, Defendant clarified that it intended its Memorandum as a Rule 12(b)(6) Motion.

*v. Russell,* 473 U.S. 134, 146, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)) (emphasis in original).

ERISA specifically provides that it preempts any and all state laws which would give a party recourse for a provider's failure to comply with an obligation under an employee benefit plan. "[T]he provisions of [ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. If a Plaintiff was allowed to vindicate his rights under an employee benefit plan through state law causes of action, this would effectively create a way around the provisions of ERISA, and threaten the stability and uniformity of federal employee benefit and pension law.

■ The Supreme Court of the United States has held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96–97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). "Although the phrase 'relates to' has an expansive connotation, ERISA's preemptive scope is not unlimited, for '[i]f "relate to" were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course, for really, universally, relations stop nowhere.'" *Great–West Life & Ann. Ins. Co. v. Inf. Sys. & Networks Corp.,* 523 F.3d 266, 270 (4th Cir. 2008) (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 655, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)). Section 1132 of ERISA provides the remedial provisions that are to be applied in situations where a participant or a beneficiary in an employee benefit plan claims that benefits were improperly and unlawfully withheld.

In the present matter, Plaintiff is claiming that she was entitled to certain bene-fits of her life insurance plan, which was provided to her as an employee of Bank of America. She claims that her late daughter should have been considered a covered dependent under the plan, since she was listed as a dependent and Defendant continued to accept premiums. Therefore, she asserts that Defendant should have disbursed the life insurance premiums to her when her daughter died. However, she acknowledges that her daughter was clearly not a covered dependent under the written terms of the plan.

■ Section 1132(a)(1) provides that a participant or beneficiary of an ERISA plan may bring an action to recover benefits due under the terms of the plan or to enforce rights under the plan. However, "this circuit has repeatedly rejected efforts to have oral statements override the written terms of ERISA benefit plans." *Sargent v. Holland,* 114 F.3d 33, 37 (4th Cir. 1997). *See also Nichols v. Alcatel USA, Inc.,* 532 F.3d 364, 374 (5th Cir.2008) ("ERISA-estoppel is not permitted if based on purported oral modification of plan terms."). Furthermore, the Fourth Circuit has explicitly rejected an argument that a participant or beneficiary has a right to an ERISA plan's benefits because the plan provider accepted and retained premiums. *White,* 114 F.3d at 29; *see also Sippel v. Reliance Std. Life Ins. Co.,* 128 F.3d 1261 (8th Cir.1997) (same); *Glass v. United of Omaha Life Ins. Co.,* 33 F.3d 1341, 1348 (11th Cir.1994) (same). Plaintiff acknowledges that she has no right of recovery under this subsection for payment of plan benefits, which is why she believed it would be futile to bring a claim under § 1132(a)(1). (Pl.'s Reply at 4.)

Instead, Plaintiff's sole ERISA claim is a claim for breach of fiduciary duty. ERISA provides that a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice

which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). Plaintiff asserts that Defendant breached its fiduciary duty to her by continuing to accept premiums and representing that her daughter was a covered dependent under this plan when she was not, in fact, covered.

■ However, Plaintiff also seeks to recover damages under several state law causes of action. Specifically, Plaintiff alleges that Defendant's actions constituted negligence, promissory estoppels, and breach of contract. Defendant asserts that all three of these state law causes of action are preempted by ERISA. Defendant bears the burden of showing to this Court that these claims are, in fact, preempted. *Great–West,* 523 F.3d at 270.

■ Plaintiff's theory is that, in essence, since Plaintiff was not a beneficiary of the life insurance plan, she has no recourse under ERISA, and therefore is entitled to seek relief under state law causes of action. This theory is erroneous, and Plaintiff's state law claims are preempted by ERISA.

Plaintiff's case relies heavily on an unpublished opinion of the Fourth Circuit, which was issued in 1998. *Gardner v. E.I. DuPont de Nemours and Co., Inc.,* 1998 WL 743669 (4th Cir.1998) (unpublished). That case involved a widow whose husband had worked for DuPont for many years. While employed, he had participated in two separate life insurance programs, the contributory plan, in which the participant chose to put some of his salary towards the life insurance policy, and the non-contributory plan, which automatically covered every DuPont employee. DuPont's policy was that if an employee left the company, he or she could only elect to maintain the contributory policy if he or she had been employed by the company for at least 15 years.

Mrs. Gardner's late husband left the company after only nine years, and was therefore not eligible to continue his participation in the contributory program. However, he informed DuPont he wished to continue his participation in the plan, and DuPont, not catching the error, continued to deduct a monthly amount from his disability check. After Mr. Gardner's death, DuPont refused to pay the coverage amount on the contributory policy, claiming that Mr. Gardner was not eligible for such coverage. Mrs. Gardner sued DuPont in federal court, asserting various state law claims, and the district court dismissed the suit, ruling that such claims were preempted by ERISA.

However, the Fourth Circuit reversed the district court, and held that these claims were not preempted by ERISA and should be allowed to go forward. The Court noted that ERISA only allowed a suit by a participant or beneficiary, and since Mrs. Gardner was never a participant in an ERISA plan, and Mr. Gardner was not a participant in such a plan at the time of his death, Mrs. Gardner could not, then, have been a beneficiary of any such plan. The Court concluded by saying that "[b]ecause Mr. Gardner was not a participant, Mrs. Gardner cannot be a beneficiary under ERISA and *thus has no standing . . . .* therefore, her state-law claims are not pre-empted." *Id.* at *4 (emphasis added).

Plaintiff asserts that this case is directly on point, as it involved a party who believed that she was entitled to life insurance benefits arising out of an ERISA-covered employee benefits plan. However, the key point upon which the court's opinion turned was the fact that Mrs. Gardner's link to the actual plan was too atten-

uated to support standing. Mrs. Gardner was not a participant in the plan at all, and Mr. Gardner was not a participant in the contributory plan after his employment with DuPont ended, which would have made Mrs. Gardner a beneficiary, so no claim could be brought against DuPont under ERISA.[3]

The case now before the Court is very different in these respects. Here, there is no question that Plaintiff has standing to bring a suit under ERISA. ERISA authorizes participants or beneficiaries to bring a suit against an employee benefit plan provider. 29 U.S.C. § 1132(a)(1)(B). The statute defines those terms as follows:

> The term "participant" means an employee or former employee of an employer or any member or former member of an employee organization who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization or whose beneficiaries may be eligible to receive any such benefit.
> The term "beneficiary" means a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder.

29 U.S.C. § 1002(7)-(8).

It is undisputed that Plaintiff is an employee of Bank of America who has an employee benefit plan provided by Bank of America. She has life insurance under this plan on her own life, and she believed she had life insurance on the life of her daughter. Plaintiff cannot claim, then, that she is not a "participant" in the plan in question under the statutory definition of that term. Therefore, unlike the plaintiff in *Gardner*, Plaintiff does have standing to bring an ERISA action against Defendant in this matter, so that case is inapposite to the matter currently before the court. *See also Madonia v. Blue Cross & Blue Shield of Virginia*, 11 F.3d 444, 446 ("ERISA preempts all state claims that 'relate to any employee benefit plan.' In order for Madonia's state law claims to be preempted by ERISA, two criteria must be met: first, an 'employee benefit plan' must exist; second, Madonia must have standing to sue as a 'participant' or 'beneficiary' of that employee benefit plan.")

Plaintiff asserts that her state law claims should not be preempted by ERISA because she is not a beneficiary of the plan, since Defendant decided that she was not due any benefits from the insurance she believed she had taken out on her daughter's life. However, this line of reasoning would completely defeat Congress' goal of making ERISA the exclusive, uniform law governing all pension and employee benefit law in the United States. If this Court were to accept Plaintiff's interpretation of the law, any person whose claim for benefits was denied could make the claim that since they were denied benefits, that meant that they were not a beneficiary, and since they were not a beneficiary, they were free to bring any claims against the plan provider under state law. If this were the case, then the

---

**3.** Plaintiff also relies upon *Miller v. Rite Aid Corp.*, 504 F.3d 1102 (9th Cir.2007), which is similarly inapposite. There, a court determined that a plaintiff's state law claims were not preempted by ERISA, and could go forward. However, the question before the court there was whether or not the plan in question was an employee benefit plan at all such that it would even be covered by ERISA.

Ultimately, the Ninth Circuit determined that the plan was not provided to the plaintiff pursuant to his employment, and therefore ERISA was inapplicable. Here, on the contrary, it is undisputed that the life insurance plan at issue was provided to Plaintiff as part of her employee benefits package with Bank of America.

law governing the remedies available to those that were denied employee benefits would vary widely from state to state, which would completely frustrate the purpose of ERISA.

■ Plaintiff is construing the term "beneficiary" far too narrowly. A beneficiary, for ERISA purposes, is not merely someone who actually receives employee benefits, or who is entitled to receive benefits. Rather, as the statutory definition provides, it is someone who is designated by the participant who is *or may become* eligible to receive benefits under the plan at any point. That someone is designated in error when they are in fact ineligible does not necessarily mean that they have no standing to sue under ERISA. If someone was erroneously or capriciously denied benefits to which they were rightfully entitled under an employee benefits plan, Plaintiff surely would not argue that such a person was not a beneficiary who had standing to bring an ERISA claim. It seems, therefore, that Plaintiff's proposed application of the law is that a person who is entitled to benefits under the terms of the plan is a beneficiary, and a person who is not entitled to benefits under the plan is not a beneficiary. This makes no sense, however, for the purposes of determining standing, because it would, essentially, call upon the district court to *first* determine whether not a plaintiff's claim was meritorious or not simply to determine whether or not the plaintiff had standing to bring the suit in the first place. This would be a case of the proverbial tail wagging the dog, and such a narrow reading of the term "beneficiary" would therefore turn ERISA law on its head, and cannot stand.

The only logical interpretation of the law in this area, then, is that anyone who is a participant in an employee benefit plan has standing to bring an ERISA claim. Plaintiff does not dispute that she is a participant, and fully acknowledges that she set up, through her employer Bank of America, the life insurance plan in question. A beneficiary, then, is anyone designated by the participant with the intent that they possibly receive benefits under the plan. Whether they are actually entitled to receive such benefits is a matter of substantive legal interpretation and ERISA application, not a threshold issue about whether ERISA even governs the issue. Here, Plaintiff was both participant and beneficiary of the plan, and clearly had standing to bring this action.

As stated above, Congress, in the legislative history and language of ERISA itself, made it clear that the Act was to be the exclusive law governing the provision and administration of pension and employee benefit plans. The Supreme Court has expressly held that if a state law claim "relates to" the administration of an ERISA-governed employee benefits plan, that claim is therefore preempted by federal law. *See, e.g., Pilot Life Ins. Co.*, 481 U.S. at 54, 107 S.Ct. 1549. The Court has also held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Shaw*, 463 U.S. at 96–97, 103 S.Ct. 2890.

Here, there can be no doubt that Plaintiff's claims "relate to" an employee benefit plan. The gravamen of all of Plaintiff's state law claims is that Defendant represented to her that her daughter would be insured, that she believed her daughter's life was insured under the plan, and that she therefore believes she is entitled to benefits under the plan. The administration, terms, and benefits of the benefit plan in question are at the very core of all of these claims, and it would be impossible to resolve any of these claims without impeding on legal territory which Congress has very clearly intended to be the exclusive domain of ERISA. *Cf. Davila*,

542 U.S. at 210, 124 S.Ct. 2488 ("[A]ny state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore preempted.").

Accordingly, Plaintiff's state law causes of action are all preempted by ERISA, and therefore fail as a matter of law.

## II. Plaintiff's Breach of Fiduciary Duty Claim

This Court next turns to Plaintiff's sole remaining cause of action, a claim for breach of fiduciary duty. Section 1104 of ERISA provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and ... for the exclusive purpose of providing benefits to participants and their beneficiaries." In her Complaint, Plaintiff seeks to recover for breach of fiduciary duty under § 1132(a)(2) or (a)(3).

However, § 1132(a)(2) is only concerned with a breach of fiduciary duty towards the plan itself, and gives right to a cause of action when benefits authorized under the written terms of the plan are not disbursed, or when benefits are disbursed which are not authorized under the plan. *LaRue v. DeWolff, Boberg, & Assoc.*, 552 U.S. 248, 128 S.Ct. 1020, 1024, 169 L.Ed.2d 847 (2008) ("In holding that (a)(2) does not provide a remedy for this type of injury, we stress that the text of [§ 1109(a)] characterizes the relevant fiduciary relationship as one 'with respect to a plan,' and repeatedly identifies the 'plan' as the victim of any fiduciary breach and the recipient of any relief."). Here, Plaintiff is claiming that Defendant breached its fiduciary duty towards her, and acknowledges that she was not entitled to receive benefits under the written terms of the plan, so § 1132(a)(2) is therefore inapplica-

ble. To the extent Plaintiff is claiming relief under § 1132(a)(2) for a breach of fiduciary duty, such a claim fails as a matter of law.

This means that any claim by Plaintiff for breach of fiduciary duty must be brought under § 1132(a)(3). Plaintiff claims that Defendant's actions constituted a breach of its fiduciary duty to her in violation of that subsection. In their pleadings, the parties do not seem to be disputing whether or not Plaintiff may bring a claim under that section; rather, the main point of contention regarding Plaintiff's § 1132(a)(3) is the extent of damages Plaintiff may recover.

Congress intended ERISA to incorporate many of the fundamental tenets of the common law of trusts, thus forming a body of ERISA-specific common law that courts and parties could use in dealing with ERISA. Here, Plaintiff seeks to specifically incorporate many of the common law principles of estoppel into ERISA, which would require a provider to provide full benefits to an employee if the provider had made representations of coverage. Plaintiff cites extensively to an opinion of the Solicitor General, who sought to have the Supreme Court of the United States grant certiorari on an appeal of a decision of the Fifth Circuit on this issue.

However, adopting such a rule would seem to conflict with this circuit's rule, explained above, that ERISA does not provide for recovery in cases where the employee has alleged that some oral modification was made to the clear written terms of the plan. Furthermore, the Fourth Circuit has explicitly held that, "[n]or can [a plaintiff] rely on the federal common law under ERISA, which does not incorporate the principles of waiver and estoppel." *White v. Provident Life & Acc. Ins. Co.*, 114 F.3d 26, 29 (4th Cir.1997). Very recently, the Fourth Circuit has fur-

ther elaborated on this, making it very clear that state law principles of waiver and estoppel are not part of ERISA's federal common law:

> The "mistake" in *White* of negligently issuing the insurance policy could not create an equitable bar of waiver and estop the insurer from applying the ERISA plan as written and administering the Plan in compliance with ERISA which required cancellation of the insurance policy in question. Similarly, the "mistake" by Reliance in failing to initially assert the Pre–Existing Conditions Limitation cannot estop Reliance from asserting that exclusion under some notion of waiver because Reliance is required to administer the Plan as written, including the Pre–Existing Conditions Limitation. The district court's holding has the actual effect of deeming Reliance to have waived the Pre–Existing Conditions Limitation and stopping it from administering the Plan according to its own terms. But as we made clear in *White*, "ERISA ... does not provide for such unwritten modifications of ERISA plans. *See* 29 U.S.C. § 1102(a)(1) (requiring that '[e]very employee benefit plan shall be established and maintained pursuant to a written instrument'); 29 U.S.C. § 1102(b)(3) (requiring that an ERISA plan describe the formal procedures by which the plan may be amended.)" *White,* 114 F.3d at 29. *See also Canada Life Assurance Co. v. Estate of Lebowitz,* 185 F.3d 231, 235 (4th Cir.1999) ("This Court will enforce the plain language of an insurance policy unless it is in violation of ERISA."); *Coleman* [*v. Nationwide Life Ins. Co.*], 969 F.2d [54] at 56 [ (4th Cir. 1992) ] ("While a court should be hesitant to depart from the written terms of a contract under any circumstances, it is particularly inappropriate in a case involving ERISA, which places great emphasis upon adherence to the written provision in an employee benefit plan."); *Lockhart v. United Mine Workers of America 1974 Pension Trust,* 5 F.3d 74, 78 (4th Cir.1993) ("The award of benefits under any ERISA plan is governed in the first instance by the language of the plan itself.").

*Gagliano v. Reliance Standard Life Ins.,* 547 F.3d 230, 239 (4th Cir.2008).[4] It is clear, then, that the law of this circuit is that actions by plan providers which, in other contexts, may give rise to a claim for oral modification, waiver, or estoppel, do not affect the written terms of an ERISA-governed employee benefit plan.

The Supreme Court has held that § 1132(a)(3) only authorizes claims which are not governed by other ERISA provisions. *Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). The Fourth Circuit has explicitly ruled that an employee cannot bring a case seeking the payment of benefits under § 1132(a)(3), because the payment of benefits is not an equitable remedy, and is explicitly governed by the rules of § 1132(a)(1)(B):

> In *Varity*, the Supreme Court identified the danger that a beneficiary might "repackage his or her 'denial of benefits'

---

**4.** Plaintiff's counsel brought this case to the Court's attention in the form of a Notice of Supplemental Authority immediately upon the Fourth Circuit's issuance of this decision. While recognizing that the case was detrimental to his client's argument, Plaintiff's counsel nonetheless was compelled to share it with this Court in conjunction with his ethical obligations. While it is true that attorneys are ethically expected to bring to the Court's attention any recent decisions which may affect the matter before the Court, compliance with that obligation has unfortunately become all too rare. The Court simply notes that Plaintiff's counsel does credit to himself, both as a member of the bar and an officer of this Court, through such actions.

claim as a claim for 'breach of fiduciary duty.'" The Court found this risk "unlikely to materialize," however, in part because "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief." In suggesting that Congress "provided adequate relief" for a "denial of benefits" claim without recourse to § 1132(a)(3), the Supreme Court intimated that equitable relief for breach of fiduciary duty would not be available for denial of benefits claims appealable under § 1132(a)(1)(B).

Although the Second Circuit has held that plaintiffs may seek relief simultaneously under § 1132(a)(1)(B) and § 1132(a)(3), the great majority of circuit courts have interpreted *Varity* to hold that a claimant whose injury creates a cause of action under § 1132(a)(1)(B) may not proceed with a claim under § 1132(a)(3).

These courts have not allowed claimants to proceed with § 1132(a)(3) claims where relief was potentially available to them under § 1132(a)(1)(B) because, in *Varity*, "[t]he Supreme Court clearly limited the applicability of § 1132(a)(3) to beneficiaries who may not avail themselves of § 1132's other remedies." *Wilkins [v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 615 (6th Cir.1998)]. A plaintiff whose injury consists of a denial of benefits "has adequate relief available for the alleged improper denial of benefits through his right to sue [the benefit plan] directly under section 1132(a)(1)," and thus "relief through the application of Section 1132(a)(3) would be inappropriate." *Tolson [v. Avondale Indus., Inc.,* 141 F.3d 604, 610–11 (5th Cir. 1998)]. To allow a claim under § 1132(a)(3) would permit "ERISA claimants to simply characterize a denial of benefits as a breach of fiduciary duty, a result which the Supreme Court expressly rejected." *Wilkins,* 150 F.3d at 616.

*Korotynska v. Metropolitan Life Ins. Co.,* 474 F.3d 101, 106–07 (4th Cir.2006) (citations omitted).

■ Here, Plaintiff did not bring a claim for denial of benefits under § 1132(a)(1). However, an examination of Plaintiff's claim and the relief sought clearly demonstrates that the gravamen of Plaintiff's complaint is that she is entitled to life insurance benefits under the plan, and that Defendant should have to provide her with these benefits. This is, then, at its core, a claim that Defendant wrongfully denied her benefits under an ERISA-covered employee benefits plan. As the Supreme Court explained in *Varity* and the Fourth Circuit explained in *Korotynska,* § 1132(a)(1) is the exclusive avenue of recourse for such a claim.

The fact that Plaintiff did not bring a claim under § 1132(a)(1) does not change this fact. *See id.* at 106 ("The fact that the plaintiff has not brought an § 1132(a)(1)(B) claim does not change the fact that benefits are what she ultimately seeks, and that redress is available to her under § 1132(a)(1)(B)."). Nor does the fact that Plaintiff acknowledges she is not entitled to benefits under the written terms of the plan, and therefore any § 1132(a)(1) claim would fail as a matter of law. Simply put, there is a big difference between a cause of action being unavailable to a plaintiff and a cause of action being available but ultimately unsuccessful. If this Court were to allow Plaintiff to rebrand a claim which is, in essence, a claim for denial of benefits, as a claim for "breach of fiduciary duty," then there would seemingly be nothing to stop any employee who feared he or she would not be successful in an § 1132(a)(1) claim from instead bringing a claim under § 1132(a)(3) and attempting to prevail by appealing to the court's broader equitable powers. To do so would effec-

tively render § 1132(a)(1) irrelevant, and would greatly destabilize the uniformity of federal law in the area of employee benefits.

Other federal courts have faced the issue of whether or not an employee could recover consequential damages under § 1132(a)(3). In many material respects, the present case resembles the Fifth Circuit's recent decision in *Amschwand v. Spherion Corp.* 505 F.3d 342 (5th Cir. 2007), *cert. denied,* —— U.S. ——, 128 S.Ct. 2995, 171 L.Ed.2d 911 (2008). In that case, a widow of a deceased employee sued the plan provider under § 1132(a)(3), seeking the payment of benefits under a life insurance plan, based on an allegation that she had been assured that her deceased husband retained life insurance coverage after a switch in plan providers. However, he was not covered under the written terms of the plan, and when he passed away, the provider denied her claim for benefits. She sued the plan provider under § 1132(a)(3), seeking her late husband's benefits, to which she believed she was rightfully entitled.

 The Fifth Circuit held, citing extensively to the Supreme Court's decision in *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), that the type of equitable relief federal courts are empowered to grant under § 1132(a)(3) does not encompass consequential damages, but merely restitution damages. *Id.* at 345. It noted that "[t]he crucial distinction between two historical species of restitution is that equitable restitution seeks only to restore to the plaintiff particular funds or property in the defendant's possession, while legal restitu-

tion imposed personal liability for breach of a legal duty." *Id.* at 346. Under § 1132(a)(3), courts may only grant relief in the form of the former, not the latter. *See also id.* at 347–48 ("A defendant's possession of the disputed res is central to the notion of a restitutionary remedy, which was conceived not to assuage a plaintiff's loss, but to eliminate a defendant's gain.").

Ultimately, the Fifth Circuit concluded: Thus, if Spherion breaches its fiduciary duty to Mr. Amschwand, the appropriate equitable remedy is the disgorgement of Spherion's ill-gotten profits, *i.e.,* refund of the policy premiums.

Obtaining the lost policy proceeds, as Amschwand requests, is simply a form of make-whole damages. This demand is not equitable in derivation, but is akin to the legal remedies of extracontractual or compensatory damages. In contrast to the make-whole damages sought here, equitable restitution was designed to restore the trust res damaged by a trustee's breach of duty; it did not aim to compensate a beneficiary for expected gains that would have accrued absent a fiduciary's breach. Because the remedy sought here was not typically available in pre-fusion courts of equity, we are obliged to follow the Supreme Court's decision in *Great-West* and deny § 502(a)(3) relief.

*Id.* at 348 (citations omitted).

The Fifth Circuit's application of § 1132(a)(3) to a claim which is very similar to Plaintiff's claim in the present matter is very much in line with the law of both the Supreme Court and the Fourth Circuit, as well as nearly all other circuits to have ruled upon the issue.[5] Therefore,

---

5. *See also Fox v. Herzog Heine Geduld, Inc.,* 232 Fed.Appx. 104, 106 (3d Cir.2007); *Goeres v. Charles Schwab & Co.,* 220 Fed.Appx. 663 (9th Cir.2007), certiorari denied —— U.S. ——, 128 S.Ct. 2994, 171 L.Ed.2d 911 (2008); *Todisco v. Verizon Comm'ns,* 497 F.3d 95 (1st Cir.2007); *Coan v. Kaufman,* 457 F.3d 250 (2d Cir.2006); *Calhoon v. TWA,* 400 F.3d 593 (8th Cir.2005); *Callery v. United States Life Ins. Co.,* 392 F.3d 401 (10th Cir.2004); *Helfrich v. PNC Bank., Ky., Inc.,* 267 F.3d 477 (6th

we are compelled to limit any damages sought by Plaintiff in her § 1132(a)(3) claim to the premiums which were withheld by Defendant for coverage which Plaintiff never actually had on the life of her daughter.

However, while this Court is compelled to such a holding by the law of ERISA as interpreted by higher courts, it cannot ignore the dangerous practical implications of this application. The law in this area is now ripe for abuse by plan providers, which are almost uniformly more sophisticated than the people to whom they provide coverage. With their damages limited to a refund of wrongfully withheld premiums, there seems to be little, if any, legal disincentive for plan providers not to misrepresent the extent of plan coverage to employees or to wrongfully accept and retain premiums for coverage which is, in actuality, not available to the employee in question under the written terms of the plan.

If the employee never discovers the discrepancy, the plan provider continues to receive windfall profits on the provision in question without bearing the financial risk of having to provide coverage. If the worst happens and the employee does file for the benefits for which he or she had been paying and seeks the coverage he or she believed was provided, the plan provider may then simply deny the employee's benefits claim, and have their legal liability limited to a refund of the premiums. The worst case scenario for fiduciary behavior which is either irresponsible or dishonest, then, in this context, is simply that the plan provider does not profit, but they would never be punished and would not be required to provide the coverage for which

the employee was paying and for which, in cases like the present matter and *Amschwand*, the employee asserts he or she was assured by the provider existed.

Plaintiff's allegations in this case present a compelling case for the availability of some sort of remedy for the breach of fiduciary duty above and beyond the mere refund of wrongfully retained premiums. Plaintiff's assertion, based largely upon the Solicitor General's amicus curie brief to the Supreme Court recommending that certiorari be granted in *Amschwand*, that much of the caselaw in the area of available remedies for § 1132(a)(3) actions is based upon an erroneous understanding of the equitable remedies traditionally available under trust law is undeniably well-researched and compelling. This Court agrees wholeheartedly with Judge Benavides' very brief concurring opinion in *Amschwand*, which stated simply that "[t]he facts as detailed in Chief Judge Jones's opinion scream out for a remedy beyond the simple return of premiums. Regrettably, under existing law it is not available. I am constrained to join the court's opinion, which I find correctly applies controlling precedent." *Id.* at 348–49. This Court is aware of the irony of its using the word "equity" so often in an Order which sustains a legal application which can potentially be abused, but the law at present prohibits Plaintiff from seeking consequential damages in a § 1132(a)(3) claim, so Plaintiff's damages on this claim are limited to a refund of the withheld premiums.

■■■ The Court further notes that unlike many ERISA claims, a cause of action under § 1132(a)(3) is not subject to the

Cir.2001). *But see Bowerman v. Wal–Mart Stores, Inc.*, 226 F.3d 574, 592 (2000) (holding that monetary damages may be awarded in a § 1132(a)(3) claim because "when sought as a remedy for breach of fiduciary duty restitu-

tion is properly regarded as an equitable remedy because the fiduciary concept is equitable.") (quoting *Health Cost Controls of Ill., Inc. v. Washington*, 187 F.3d 703, 710 (7th Cir.1999)).

 

exhaustion requirement. Plaintiffs are generally required to first appeal through the appropriate administrative channels of the plan provider any decision to deny benefits before bringing a claim under ERISA. However, the rationale for this requirement is that the plan provider has greater expertise on the terms and conditions of the plan and the rules governing the plan than courts, and so may potentially satisfy the employee's claim before the issue becomes the subject of litigation. A claim for a breach of fiduciary duty is basically a claim that a plan provider has done something dishonest or careless in the administration of benefits, so it would make no sense to force employees to put the issue of a breach of duty before the very fiduciary party which is being accused of breach for a decision before they can litigate the claim in court. *Smith v. Sydnor*, 184 F.3d 356, 364–65 (4th Cir.1999). Therefore, Plaintiff was not required to exhaust any administrative remedies with Defendant before bringing this claim.

This also logically means that this Court's case management Order will be amended in order to allow the parties the opportunity to conduct discovery. Ordinarily, case management orders in ERISA cases does not provide for discovery, because this Court is ordinarily conducting a review of a provider's decision to deny benefits, and is limited to the same information in the administrative record used by the provider to make that decision. Here, however, the claim for breach of fiduciary duty is very different in nature, and Plaintiff could present information gained in discovery to aid in her case.

Accordingly, Defendant's Motion to Dismiss Plaintiff's claim for relief under 29 U.S.C. § 1132(a)(3) is denied, although the Court does hold that Plaintiff may not recover any consequential damages on that claim.

## CONCLUSION

For the foregoing reasons, the Court finds that Defendant Metropolitan Life Insurance Company's Motion to Dismiss is **GRANTED** with regard to Plaintiff Debbie McCravy's claims for negligence, promissory estoppel, breach of contract, and breach of fiduciary duty under 29 U.S.C. § 1132(a)(2). However, for the foregoing reasons, Defendant's Motion to Dismiss Plaintiff's claim for breach of fiduciary duty under 29 U.S.C. § 1132(a)(3) is **DENIED.**

**AND IT IS SO ORDERED.**